# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL VANSTORY, ) | |
| Plaintiff, ) | |
| v. ) | Case No. 3:24-cv-00945 |
| ) | Judge Aleta A. Trauger |
| AMERICAN HEALTH PARTNERS ) | |
| MANAGEMENT, LLC, ) | |
| Defendant. ) | |

## MEMORANDUM

The deadline to move to amend the pleadings in this case was March 31, 2025. (Doc. No. 21 at 5.) But, the plaintiff argues, he learned in May through discovery that a second party is at least partly to blame for his injuries. So, the plaintiff has moved under Rule 16(b)(4) to extend the deadline to amend the pleadings, to amend the pleadings under Rule 15(a)(2), and to join a defendant under Rule 20(a)(2). For the reasons set forth herein, the court will grant the plaintiff's motion over the defendant's objection.

## I. FACTS AND PROCEDURAL HISTORY

The facts are drawn from the First Amended Complaint ("FAC") (Doc. No. 7), the operative pleading. Plaintiff Michael VanStory is a biracial former employee of defendant American Health Partners Management, LLC ("AHP"), a healthcare management company. (FAC ¶¶ 1, 6, 8.) VanStory served as National Director of Sales for four AHP subsidiaries, two of which AHP sold to Addus HomeCare Corporation ("Addus") in June 2023. (*Id.* ¶¶ 7–9.) VanStory alleges that, before the sale, his managers subjected him to racially motivated harassment and discrimination and retaliation for reporting the same. (FAC ¶¶ 11–17, 21–24, 26–30, 32.) In further

retaliation, AHP kept VanStory, unlike his white colleagues, in the dark about the sale, and he was not given a similar job—or even the opportunity to apply for a similar job—at Addus after the sale. (*Id.* ¶¶ 14, 18–19, 35–36.) Further, in August 2023, AHP terminated VanStory, rather than allow him to continue working for the two subsidiaries that it had not sold. (*Id.* ¶¶ 19, 37–38.) VanStory alleges that AHP used its restructuring as a pretense for not transferring him to Addus and then firing him, which it in fact did out of racial animosity and for his reporting race-based harassment and discrimination. (*Id.* ¶¶ 25, 39–40.)

VanStory filed charges with the EEOC for discrimination and retaliation and received a Notice of Right to Sue. (*Id.* ¶ 5.) The FAC sets forth two "counts." In Count I, the plaintiff asserts claims for race discrimination and racial harassment in violation of 42 U.S.C § 1981; the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-101, *et seq.*; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* (*Id.* ¶¶ 41–45.) In Count II, he asserts claims for retaliatory discharge from employment in violation of the same three statutory schemes. (*Id.* ¶¶ 46–50.) He seeks compensatory and punitive damages, front and back pay, and costs and fees. (*Id.* at 9–10.) The defendant filed an answer (Doc. No. 15), and the parties are in discovery.

Before the court is the plaintiff's opposed Renewed Motion for Joinder of Addus HomeCare as a Defendant and to Enlarge Time to Add Parties (Doc. No. 27).[1] The plaintiff has also filed a Memorandum in support of his motion (Doc. No. 27-1), a proposed Second Amended Complaint (Doc. No. 27-2), a revised proposed Second Amended Complaint ("Revised Proposed SAC") (Doc. No. 42) filed with leave of court, and a proposed order (Doc. No. 27-3). The

---

[1] The court will not address an apparent disagreement between the parties regarding their meet and confer. (*See* Doc. No. 28 at 1 & n.1 (first quoting Doc. No. 27 at 4; and then citing Doc. Nos. 28-1 through 28-4).) Suffice it to say, the defendant opposes the plaintiff's motion. (*Id.* at 1 n.1 ("Plaintiff had accurately described Defendant's position on Plaintiff's motion.").)

defendant has filed a Response (Doc. No. 28) and seven exhibits (Doc. Nos. 28-1 through 28–7), and the plaintiff has filed a Reply (Doc. No. 29) and five exhibits (Doc. Nos. 29-1 through 29-5).

The Revised Proposed SAC makes several changes to the FAC. First, it adds Addus as a party. Second, it specifies that the claims for "race discrimination and racial harassment" (Count I, Revised Proposed SAC ¶¶ 41–45) and "retaliatory discharge from employment" (Count II, *id.* ¶¶ 46–50) are alleged against both defendants. Third, it adds a claim against Addus for "race discrimination and retaliation—failure to hire/transfer." (Count III, *id.* ¶¶ 51–60.) Fourth, it adds a claim against both parties for "conspiracy to interfere with civil rights." (Count IV, *id.* ¶¶ 61–67.) And fifth, it adds new factual allegations, both in the "Facts" section and within the causes of action, seemingly to support both the addition of Addus as a defendant[2] and to support the new conspiracy claim.[3]

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 15(a)(1) permits a party to amend its pleading "once as a matter of course" within twenty-one days after serving it or twenty-one days after service of a responsive pleading or motion to dismiss. Fed. R. Civ. P. 15(a)(1)(A)–(B). Once that window is closed, Rule 15(a)(2) allows a party to amend its pleading only with the opposing party's consent or by leave of court. In addition, however, in every civil case, the district court must issue a scheduling order that includes a limit on the time for amending pleadings and filing motions. Fed. R. Civ. P. 16(b)(3)(A). Rule 16 "ensure[s] that 'at some point both the parties and the pleadings

---

[2] (*Contrast* FAC ¶ 40, *with* Revised Proposed SAC ¶ 40 (adding the sentence: "AHP also alleges that the decision not to transfer Plaintiff was solely the decision of Defendant Addus.")

[3] (*Contrast, e.g.*, FAC ¶¶ 18, 43, 47–48, *with* Revised Proposed SAC ¶¶ 18, 43, 47–48 (additionally alleging that AHP and Addus worked in concert).)

3

will be fixed.'" *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (quoting Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment).

The consideration of a motion to amend filed after the deadline set in the governing scheduling order entails a two-step process under Rules 16(b) and 15(a). *Id.* "[W]hen a party seeks to amend its pleadings . . . after the expiration of scheduling order deadlines, it must show good cause under Rule 16(b)." *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 879 (6th Cir. 2020) (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)); *see also* Fed . R. Civ. P. 16(b)(4). "'The primary measure of Rule 16's "good cause" standard is the moving party's diligence in attempting to meet' the scheduling order's requirements, but courts also consider 'possible prejudice to the party opposing the modification.'" *Garza*, 972 F.3d at 879 (quoting *Inge*, 281 F.3d at 625). If the movant clears the Rule 16 "good cause" hurdle, the court must then consider whether the proposed amendment is permissible under Rule 15. *Leary*, 349 F.3d at 909. Under that rule, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) "embodies a 'liberal amendment policy.'" *Brown v. Chapman*, 814 F.3d 436, 442 (6th Cir. 2016) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)).

However, notwithstanding the liberality with which courts generally are to approach such motions, a motion to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of*

4

*Treasury*, 987 F.2d 376, 382–83 (6th Cir. 1993)). "Ordinarily, delay alone, does not justify denial of leave to amend." *Morse*, 290 F.3d at 800 (citation omitted). "At some point, however, 'delay will become "undue," placing an unwarranted burden on the court, or will become "prejudicial," placing an unfair burden on the opposing party.'" *Id.* (quoting *Adams v. Gould*, 739 F.2d 858, 863 (3d Cir. 1984)).

## III. DISCUSSION

### A. Rule 16(b)(4)

#### 1. *The plaintiff's diligence*

"[T]he touchstone of the good cause inquiry under Rule 16(b) is whether the moving party acted diligently in attempting to meet the deadline set forth in the pretrial order." *Forsman v. Silverstein*, No. 2:22-cv-4415, 2025 WL 1141812, at *3 (S.D. Ohio Apr. 17, 2025) (citation omitted). This motion is premised on the plaintiff's recent discovery that Addus, not AHP, may have decided that he would not move to Addus, upon the sale by AHP to Addus of the two subsidiaries he worked for. As the plaintiff puts it: "[o]nly during discovery did Plaintiff first learn of Addus's involvement. Specifically, in response to Plaintiff's Interrogatory No. 11 Defendant AHP stated—for the first time—that Addus was the sole decision-maker in determining whether Plaintiff would be transferred to Addus along with colleagues following the sale of a portion of their business." (Doc. No. 27 at 2; *see also* Doc. No. 29 at 11 ("Until Defendant disclosed its position in discovery, Addus appeared to be nothing more than a third-party entity mentioned in Defendant's proffered justification for Plaintiff's termination.").) The defendant, for its part, argues that, by the foregoing, the plaintiff has made "shocking and demonstrably false misrepresentations to this Court." (Doc. No. 28 at 3 (citing Doc. No. 27 at 1–3).) And, the defendant argues, these shocking misrepresentations themselves are sufficient reason for the court to deny the motion. (*Id.* at 4.) The court finds no such shocking misrepresentations.

5

Interrogatory 11 asks the defendant, in relevant part, to "[i]dentify each . . . individual involved in the decision to terminate Plaintiff from his position and/or the decision to exclude Plaintiff from any new positions available and/or to not extend an offer for Plaintiff in any new position after the sale of [AHP subsidiary] Tennessee Quality to Addus."[4] (Doc. No. 28-5 at 7.) The defendant answers: "The decision as to who Addus wanted to . . . hire after the transaction between American Health Partners and Addus was solely made by Addus."[5] (*Id.*)

First, the defendant states that the plaintiff misrepresents its answer to Interrogatory 11. But the defendant does not explain what is mispresented, instead implying that the misrepresentation would be obvious to the court. (Doc. No. 28 at 2 (first quoting Doc. No. 27 at 2; and then quoting Doc. No. 28-5 at 7).) In reviewing Interrogatory 11 and its answer, the court does not understand in what way the defendant believes the plaintiff has misrepresented the defendant's answer by stating that, "Defendant AHP stated—for the first time—that Addus was the sole decision-maker in determining whether Plaintiff would be transferred to Addus." (Doc. No. 27 at 2.) Interrogatory 11 asks who decided not to offer VanStory a position at Addus, and the answer states that it was Addus' decision alone. That is how the plaintiff describes it. This is in contrast to the FAC's allegation that *AHP* decided not to allow VanStory to apply for or transfer to positions with Addus, as his white colleagues did (FAC ¶¶ 18–19, 35–36, 39), which is why the plaintiff seeks leave to join Addus as a defendant and add Count III.

---

[4] The plaintiff did not file its interrogatories or the defendant's responses as an exhibit, but the defendant has. (Doc. No. 28-5, Defendant's Responses to Plaintiff's First Set of Interrogatories to Defendant ("Responses to Interrogatories").)

[5] The court is cognizant of the fact that, after briefing on the pending motion concluded, the parties had a telephonic conference with Magistrate Judge Newbern regarding a discovery dispute, after which Judge Newbern entered an order directing the defendant to supplement its response to Interrogatory 11, among other actions required of both parties. (Doc. No. 38 at 1.)

6

On the other hand, the plaintiff does equivocate about what he claims to have learned through discovery. For example, the plaintiff states that "AHP seeks to allege for the first time that Addus was the sole decision-maker in [a] terminating Plaintiff, [b] failing to hire Plaintiff and [c] denying Plaintiff a transfer following the sale of a portion of [AHP]." (Doc. No. 27-1.) The foregoing is an implausibly expansive interpretation of the Answer to Interrogatory 11. Variations of this claim appear elsewhere. The plaintiff's Motion states that, during a May 5, 2025 phone call, "defense counsel stated . . . that his client's forthcoming discovery responses would attribute the decision to *terminate* Plaintiff's employment to another entity . . . . now known to be Addus." (Doc. No. 27 at 1 (emphasis added).) On the next page, the plaintiff states that during discovery he learned that "Addus was the sole decision-maker in determining whether Plaintiff would be *transferred to Addus*." (*Id.* at 2 (emphasis added).) And on the *next* page, the plaintiff states that he "had no knowledge of Addus's involvement in the decision as to *retain or transfer* Plaintiff." (*Id.* at 3 (emphasis added).) Thus, it is not clear to the court precisely what the plaintiff contends the defendant has stated about Addus' role. As the court reads it, Interrogatory 11 says nothing about Addus' role in the plaintiff's termination from AHP. And, in his reply brief, based on a fifteen page exhibit of AHP emails, the plaintiff states that he "now believes that . . . AHP and Addus may have colluded to terminate Plaintiff's employment as a result of his March 31 complaint [about discrimination]." (Doc. No. 29 at 3 (citing, generally, Doc. No. 29-1); *see also id.* at 4–5 ("Plaintiff's position remains that he was terminated due to discrimination and/or retaliation by AHP—whether Addus worked in concert with Defendant AHP to complete the retaliation is now at issue.").) It is not immediately apparent to the court, and the plaintiff does not specify, how the internal emails he cites support his suspicion of collusion.

Second, the defendant states that the plaintiff misrepresents *when* he first learned about Addus' involvement in the decision not to hire him. (Doc. No. 28 at 3.) While the plaintiff states that he first learned about Addus' involvement from the Reponses to Interrogatories, which were served on May 9, 2025 (Doc. No. 27 at 2), the plaintiff also states that his counsel learned about Addus' involvement during a phone call with defense counsel, four days earlier. (*Id.* at 1 ("[Defense counsel] stated during that conversation that his client's forthcoming discovery responses would attribute the decision to terminate Plaintiff's employment to another entity.").)[6] The court finds the plaintiff's two statements to be consistent, or to the extent they are not, the court does not find the plaintiff's statement that he only learned of Addus' involvement through the Response to Interrogatories to be a "blatantly false statement" that should end this court's consideration of the Motion, as the defendant argues. (Doc. No. 28 at 4.)

Third, the defendant points to an August 2, 2024 email in which plaintiff's counsel asked defense counsel whether he would be representing Addus as well, noting that "[t]hey [Addus] may get added to the case." (Doc. No. 28 at 3–4 (quoting Doc. No. 28-6).) The defendant does not state what this email is meant to show, but it states elsewhere in its brief that "Plaintiff was well aware of Addus's involvement in this matter at the time the Complaint was filed, and Plaintiff had adequate notice and time to add Addus to this lawsuit." (*Id.* at 6.) The plaintiff sensibly responds that, while he knew that Addus was somehow involved, he did not know, last year, that Addus was implicated in discrimination and retaliation in the way he now believes, based on a revelation through discovery. (Doc. No. 29 at 4 ("That email does not suggest prior knowledge of Addus's

---

[6] The plaintiff also describes the conversation this way: "defense counsel informally previewed that AHP would disclaim responsibility as to the transfer." (Doc. No. 29 at 8.)

8

alleged status as a decisionmaker in Plaintiff's termination—it reflects diligence in exploring a potential theory based on limited information.").)

Generally, the plaintiff argues that he was not in a position to know, until after the deadline to amend the pleadings and join a party and until he received the defendant's Responses to Interrogatories, about Addus' alleged involvement in the decision whether he would be transferred to a new position. (*See* Doc. No. 27 at 3 ("Defendant did not mention Addus being a decision-maker, much less the sole decision-maker, in its position statement at the EEOC, in any written communications with counsel, its Answer, and AHP did not include [that] Addus was a cause of the separation on the Notice of Separation, and never informed Plaintiff that Addus had any role in the employment decision.").)

This court has previously found good cause where the plaintiff sought to allege facts that came to light only through "discovery produced . . . shortly before the filing of the Motion to Amend." *United States v. Care Servs. Mgmt. LLC*, No. 3:17-cv-01478, 2025 WL 1691905, at *4 (M.D. Tenn. June 13, 2025). And "it is understandable that some discovery might be necessary in order for the parties to appreciate fully the scope of claims and defenses." *Kellogg Co. v. FPC Flexible Packaging Corp.*, No. 1:11-cv-272, 2012 WL 769476, at *3 (W.D. Mich. Mar. 7, 2012) (finding good cause for the plaintiff to add claims against a third-party defendant after the deadline, albeit in a case of greater complexity than this one). Accordingly, the court finds that the plaintiff has been diligent.

   2.   *Prejudice to the defendant*

"Another important consideration . . . is whether the opposing party will suffer prejudice by virtue of the amendment." *Care Servs. Mgmt.*, 2025 WL 1691905, at *1 (quoting *Leary*, 349 F.3d at 906). Courts have found prejudice where a party seeks leave to amend the pleadings at a late stage of litigation. *See, e.g.*, *Forsman*, 2025 WL 1141812, at *3 (finding the plaintiff's

9

amendment prejudicial to the defendants where the parties had already briefed cross motions for summary judgment) (citing *Gormley v. Precision Extrusions, Inc.*, 174 F. App'x 918, 921 (6th Cir. 2006)). Similarly, courts have found prejudice where a party seeks leave to amend the pleadings after the close of discovery. *See, e.g.*, *Everly v. Everly*, No. 3:17-cv-01440, 2020 WL 4207586, at *4 (M.D. Tenn. July 22, 2020) (collecting cases); *Gormley*, 174 F. App'x at 921 (collecting cases).

Here, the litigation is in early stages. And, even if the defendant's claim that written discovery had ended were true when the defendant filed its Response (Doc. No. 28 at 5–6),[7] since then the court has granted two jointly filed motions to extend discovery deadlines into the fall. (*See* Doc. Nos. 32, 40.) Regarding prejudice, the defendant states only that the court's granting the motion "would cause undue delay as the parties have completed most of discovery except depositions and expert reports." (Doc. No. 28 at 7.) Even if this statement were not undermined by the foregoing discussion of the extension of discovery deadlines, this boilerplate statement about delay is unconvincing, especially because of the prejudice to the plaintiff that could result from litigating two cases. And any prejudice to Addus, as a new party to the action, that could result from being forced to litigate on short timelines with a relatively compressed discovery period, *accord Hilber v. Malley's Candies, LLC*, No. 1:22-cv-2305, 2024 WL 1720879, at *7 (N.D. Ohio Apr. 22, 2024), would be mitigated by the court's willingness to extend deadlines.

The court finds that the plaintiff has been diligent, that granting the motion would result in little or no prejudice to the defendant, and that denying the motion would result in prejudice to the

---

[7] The defendant states in his May 23, 2025 response brief that "the written discovery period has ended." (Doc. No. 28 at 6.) But by that date neither had the then-controlling deadline for written discovery passed (*see* Doc. No. 21 at 5 (setting the written discovery deadline as June 30, 2025); nor had the parties, by their own account, completed written discovery (*see* Joint Motion to Modify Case Management Order, Doc. No. 30 at 2 (jointly representing that the parties "need additional time to complete written discovery"); Joint Motion to Modify Case Management Order, Doc. No. 39 at 2 (same).)

plaintiff. Thus, the court finds the plaintiff has met his burden to show good cause to modify the scheduling order under Rule 16(b)(4).

**B.     Rule 15(a)(2)**

When it is requested, the court should "freely" give leave to amend when justice so requires. *Foman*, 371 U.S. at 182. But courts may deny leave if certain factors are present. *See infra* at 4 (citing *Riverview Health Inst.*, 601 F.3d at 520). The court has already found no undue delay or prejudice to the defendant under Rule 16's "much stricter" good cause standard. *Harshaw v. Bethany Christian Servs.*, No. 1:08-cv-104, 2009 WL 5149925, at *7 (W.D. Mich. Dec. 15, 2009). Nor does the court find bad faith or dilatory motive, notwithstanding the defendant's allegation that the "[p]laintiff's counsel will apparently stop at nothing" to amend the pleadings, including by making "shocking and demonstrably false misrepresentations to this court." (Doc. No. 28 at 3, 6.)

The parties brief futility at some length. Indeed, "a request *may* be denied if it would be futile, *i.e.*, if the amended complaint would not withstand a motion to dismiss for failure to state a claim." *Doe v. Mich. State Univ.*, 989 F.3d 418, 427 (6th Cir. 2021) (emphasis added) (citing *Rose*, 203 F.3d at 420). But, as our sister court in this circuit recently noted, "although courts *may* deny a motion to amend or supplement on futility grounds, 'many courts, for reasons of practicality, decline to engage in a futility analysis at the motion to amend phase and opt instead to assess questions of plausibility later when ruling on the motion to dismiss.'" *L.H. v. Red Roof Inn, Inc.*, No. 3:22-cv-625-CHB-RSE, 2025 WL 714385, at *18 (W.D. Ky. Mar. 5, 2025) (quoting *Restocon Corp. v. Metro. Knoxville Airport Auth.*, No. 3:23-cv-142, 2023 WL 6614416, at *2 (E.D. Tenn. Aug. 25, 2023)); *see also Baird v. Nessel*, No. 24-11205, 2024 WL 4806488, at *1 (E.D. Mich. Nov. 15, 2024) ("Futility serves as a basis, not a mandate, to deny leave to amend." (collecting cases)).

11

The defendant's argument appears to be that, because Rule 15(c)'s relation-back provision does not permit amendment of pleadings to add claims against new defendants when the statutes of limitation on those claims have run, as here, amendment is futile. (Doc. No. 28 at 6.) The defendant does not make apparent which applicable statute of limitations would bar the plaintiff's claim. Proposed Count III, for race discrimination and retaliation in June 2023, is brought under Section 1981 (Revised Proposed SAC at 10 & ¶ 52), which has a four-year statute of limitations. *See Moore v. Peggy's Auto Sales, Inc.*, No. 3:21-cv-00121, 2023 WL 2587793, at *3 (M.D. Tenn. Mar. 21, 2023) (Campbell, J.) (first citing 28 U.S.C. § 1658; and then citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004)).

In any case, the court will not engage in a futility analysis. Among other reasons, the party against whom proposed Count III is asserted, Addus, is best positioned to respond to the merits, which it may do on its own motion. Further, the basis for the defendant's futility argument is the expiration of a statute of limitations, which is an "affirmative defense that a plaintiff ordinarily need not plead to state a claim." *Wershe v. City of Detroit*, 112 F.4th 357, 364 (6th Cir. 2024), *cert. denied*, 145 S. Ct. 1128 (2025); *see* Fed. R. Civ. P. 8(c)(1). And "it is usually not appropriate to dismiss a claim under Rule 12(b)(6) based upon the statute of limitations." *Singh v. Procter & Gamble Co.*, No. 23-3414, 2024 WL 2070683, at *1 (6th Cir. Jan. 24, 2024) (citing *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). Thus, the court finds amendment proper.

### C.     Rule 20(a)(2)

Rule 20(a)(2) allows joinder of defendants if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "In the Sixth Circuit, '[t]he words "transaction or occurrence" are given a broad and liberal interpretation in order to avoid a

12

multiplicity of suits.'" *Shaffer v. Donoghue*, No. 3:17-cv-571-RGJ, 2019 WL 321422, at *3 (W.D. Ky. Jan. 24, 2019) (quoting *LASA Per L'Industria Del Marmo Societa Per Azioni v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969) (alteration in *Shaffer*)). The court's inquiry should focus not on mechanically discerning whether the parties' claims arise wholly from the same specific, discrete event, but on the "similarity in the factual background of the claim[s]." *Proctor v. Applegate*, 661 F. Supp. 2d 743, 779 (E.D. Mich. 2009) (quoting *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)).

The defendant does not argue that joinder of Addus contradicts Rule 20(a), and the court does not see why it would. Moreover, "[t]he purpose of Rule 20(a) is to promote judicial economy and trial convenience." *Hammond-Beville v. Landis*, No. 3:20-cv-00973, 2022 WL 16950277, at *3 (M.D. Tenn. Nov. 15, 2022) (citing *Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 230 (M.D. Tenn. 2001) (Campbell, J.). Judicial economy and trial convenience would be served by trying the claims against both the defendant and Addus together, rather than separately. With Rule 15(a)'s liberality in mind, the court finds the joinder of Addus proper.

### D. Request to strike

The plaintiff asks the court to strike portions of the defendant's response brief that, he says, falsely accuse him of making misrepresentations. (Doc. No. 29 at 11.) The request will be denied. First, "[a]ll filings requesting . . . action by the Court must be in the form of a motion." L.R. 7.01. Second, even if the plaintiff had filed a motion in accordance with the Local Rules, motions to strike are governed by Rule 12(f), which provides that the court may "strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). "Pleadings" include only complaints, answers, counterclaims, third-party complaints, and replies to answers. Fed. R. Civ. P. 7(a). Put another way, Rule 12(f) provides

13

for striking pleadings, not briefs.[8] *See Bowles v. Tenn. Dep't of Corr.*, No. 3:22-cv-00032, 2025 WL 452463, at *9 (M.D. Tenn. Feb. 10, 2025) (Newbern, M.J.) (citing Fed. R. Civ. P. 12(f), 7(a) and collecting cases), *R. & R. adopted*, No. 3:22-cv-00032, 2025 WL 923734 (M.D. Tenn. Mar. 26, 2025) (Crenshaw, J.).

IV.   CONCLUSION

For the foregoing reasons, VanStory's Renewed Motion for Joinder of Addus HomeCare as a Defendant and to Enlarge Time to Add Parties (Doc. No. 27) will be granted.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge

---

[8] While the plaintiff does not specify the rule under which he makes his request, Rule 12(f) is the only provision that provides for striking a filing. *Accord Kiner v. City of Memphis*, No. 23-cv-02805-SHL-TMP, 2025 WL 336201, at *2 (W.D. Tenn. Jan. 23, 2025) (citation omitted).