# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL VANSTORY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 3:24-cv-00945** |
| | ) | **Judge Aleta A. Trauger** |
| AMERICAN HEALTH PARTNERS | ) | |
| MANAGEMENT, LLC, and ADDUS | ) | |
| HOMECARE CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

The defendants have each filed partial Motions to Dismiss (Doc. Nos. 53, 62), which, for the reasons set forth herein, will be granted.

## I. FACTS[1]

Plaintiff Michael VanStory is a biracial former employee of defendant American Health Partners Management, LLC ("AHP"), a healthcare management company. (Sec. Am. Compl., ("SAC"), Doc. No. 48 ¶¶ 1, 6, 8.) He was National Director of Sales for four AHP subsidiaries, including American Quality Care and Tennessee Quality ("the Subsidiaries"), which AHP sold to defendant Addus HomeCare Corporation ("Addus") in June 2023. (*Id.* ¶¶ 7–9.) VanStory alleges that, during his employment with AHP, he was subjected to racial discrimination and retaliation. (*Id.* ¶¶ 11–17, 21–24, 26–32.) Part of VanStory's allegations relate to AHP's sale of the

---

[1] For purposes of the pending motions, brought under Rule 12(b)(6), the court accepts the Second Amended Complaint's well-pleaded facts as true and draws "all reasonable inferences" in the plaintiff's favor. *Romero v. City of Lansing*, 159 F.4th 1002, 1006 (6th Cir. 2025) (citing *Guertin v. Michigan*, 912 F.3d 907, 916 (6th Cir. 2019)).

Subsidiaries to Addus. He alleges that, unlike similarly situated white colleagues, he was blindsided by the sale and not "given the opportunity to transfer [or] accept [a] new role[] as a part of the restructuring." (*Id.* ¶¶ 18–19.) He alleges that, even though he "was put on the list of people eligible for transfer to Addus from AHP, . . . AHP knew Addus would not be accepting a transfer for Plaintiff." (*Id.* ¶ 18.) In August 2023, "AHP terminated Plaintiff as a result of his race and race-based complaints about discrimination and retaliation." (*Id.* ¶¶ 38, 40.) Further, the defendants "worked in concert to deny Plaintiff employment with the pretextual reason being that he no longer had a position at AHP and [there was] no need for him to work at Addus." (*Id.* ¶ 18.)

## II.     PROCEDURAL HISTORY

The plaintiff originally brought suit against AHP only. (Doc. No. 1.) Over AHP's objections, the court granted the plaintiff's Renewed Motion for Joinder of Addus HomeCare as a Defendant and to Enlarge Time to Add Parties (Doc. No. 27). (Doc. No. 47.) The operative SAC brings four "Counts." Count I, for race discrimination and racial harassment, and Count II, for retaliatory discharge from employment, are brought against both defendants under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101 *et seq.* (*Id.* ¶¶ 41–50.) Count III, for "race discrimination and retaliation – failure to hire/transfer," is alleged against Addus only and brought under Section 1981 and Title VII. (*Id.* ¶¶ 51–60.) Count IV, for conspiracy to interfere with civil rights, is alleged against both defendants and brought under 42 U.S.C. § 1985(3). (*Id.* ¶¶ 61–67.)

AHP filed a partial Motion to Dismiss (Doc. No. 53) and an accompanying Memorandum (Doc. No. 51), to which the plaintiff filed a Response (Doc. No. 61). AHP did not file a reply brief. Although AHP states in its Memorandum that it seeks to dismiss all claims against it, it does not argue for the dismissal of all claims and in fact moves under Rule 12(b)(6) to dismiss only Count

2

IV. (*Contrast* Doc. No. 51 at 1, *with* Doc. No. 53 at 1.) Addus filed a Partial Motion to Dismiss (Doc. No. 62) and an accompanying Memorandum (Doc. No. 63), to which the plaintiff filed a Response (Doc. No. 65) and in further support of which Addus filed a Reply (Doc. No. 66). Addus also moves under Rule 12(b)(6) to dismiss Count IV in its entirety, and further seeks dismissal of the THRA claims contained within Counts I and II as untimely. (Doc. No. 62 at 1.)

## III. LEGAL STANDARD – RULE 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "failed to state a claim upon which relief can be granted." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## IV. DISCUSSION

### A. 42 U.S.C. § 1985(3)

"Congress enacted § 1985 to address the racial violence perpetrated by groups like the Ku Klux Klan after the Civil War and during Reconstruction." *Rives v. Univ. of Tenn.*, No. 24-5336, 2024 WL 5103829, at *5 (6th Cir. Dec. 13, 2024) (citing *Post v. Trinity Health-Mich.*, 44 F.4th 572, 579 (6th Cir. 2022)). Section 1985(3) creates a "private right of action against those who conspire to violate civil rights." *Deja Vu of Nashville, Inc. v. Metro. Gov't ex rel. Traffic & Parking Comm'n*, 805 F. App'x 379, 383 (6th Cir. 2020). *See* 42 U.S.C. § 1985(3) (providing a cause of action where "two or more persons . . . conspire . . . for the purpose of depriving, either directly or

3

indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws"). However, "§ 1985 does not grant any 'substantive rights itself'; rather, it provides a cause of action to redress violations of rights found elsewhere." *Post*, 44 F.4th at 581 (quoting *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979)). And "whether a private conspiracy falls within the scope of the statute depends entirely upon the nature of the right asserted." *Buck v. Goyim Def. League*, 815 F. Supp. 3d 702, 715–16 (M.D. Tenn. 2025) (Richardson, J.) (quoting *Prieto v. Kalamazoo Metal Recyclers, Inc.*, No. 1:08-cv-706, 2008 WL 5087968, at *6 (W.D. Mich. Nov. 26, 2008)). For example, the Supreme Court has held that "§ 1985(3) may not be invoked to redress violations of Title VII." *Novotny*, 442 U.S. at 378. Both defendants seek to dismiss Count IV, which alleges conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3). The court will address each defendant's arguments in turn.

> 1.    *AHP*

AHP argues in the alternative that VanStory cannot bring a Section 1985(3) conspiracy claim to vindicate rights protected by Title VII and that VanStory has alleged only conclusory facts in support of the conspiracy claim. (Doc. No. 51 at 3–7.) VanStory responds that his Section 1985(3) claim "vindicates rights under § 1981, not Title VII," and that his allegations are not conclusory. (Doc. No. 61 at 2–5.) Because AHP did not respond to the plaintiff's argument regarding whether Section 1981 violations can form the basis of Section 1985(3) conspiracy claims, the court will address only whether the SAC alleges facts with requisite specificity to state a claim under Section 1985(3), which, the court finds, it does not.

To state a claim for conspiracy under 42 U.S.C. § 1985(3), the plaintiff must allege facts showing:

> (1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws,

4

and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen.

*Brown v. Cioffi*, No. 24-1168, 2024 WL 5440982, at *16 (6th Cir. Oct. 10, 2024) (quoting *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996)). A plaintiff alleging a Section 1985 conspiracy, therefore, must plead the existence of a conspiracy, which is "an agreement between two or more persons to injure another by unlawful action." *Rieves v. Town of Smyrna*, 67 F.4th 856, 862 (6th Cir. 2023) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). To prove a conspiracy under Section 1985(3), a plaintiff "must show that (1) a single plan existed, (2) the defendant shared in the general conspiratorial objective to deprive the plaintiff of his constitutional (or federal statutory) rights, and (3) an overt act was committed in furtherance of the conspiracy that caused injury to the plaintiff." *Gerber v. Herskovitz*, 14 F.4th 500, 511 (6th Cir. 2021) (quoting *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011)).

Further, a "§ 1985(3) claim . . . 'must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim.'" *Arsan v. Keller*, 784 F. App'x 900, 914 (6th Cir. 2019) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (second omission in original)). The pleading standard for civil conspiracies is "relatively strict." *Id.* at 914 (quoting *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008)). To state a plausible conspiracy claim, a plaintiff must allege "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556 (addressing the requirements to plead an antitrust conspiracy). That is, a plaintiff must allege sufficient facts to establish a "meeting of the minds" or "link . . . the alleged conspirators in a conspiracy." *W. Cong. St. Partners, LLC v. Rivertown Dev., LLC*, 739 F. App'x 778, 784 (6th Cir. 2018) (quoting *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008)).

5

The SAC alleges little about Addus other than the fact of its acquisition of the Subsidiaries. It alleges, for example, as part of VanStory's claim against Addus for race discrimination and retaliation, that Addus' decision not to hire VanStory was "motivated, at least in part, by his race and/or in retaliation for his prior complaints of race discrimination while employed at AHP." (SAC ¶ 56.) The allegations regarding the conspiracy are the following:

> Upon information and belief, Addus and AHP worked in concert to deny Plaintiff employment with the pretextual reason being that he no longer had a position at AHP and no need for him to work at Addus. (SAC ¶ 18.)

> Defendants AHP and Addus worked in concert to make it appear as though Plaintiff was up for a transfer and then deny Plaintiff a transfer. (SAC ¶ 19.)

> Defendant AHP in concert with Defendant Addus retaliated against Plaintiff by failing to transfer him once Tennessee Quality was sold and with AHP eventually terminating his employment. (SAC ¶ 48.)

> Addus and AHP worked in concert to deprive Plaintiff of his civil rights to a workplace free of discrimination and retaliation from complaints about discrimination. (SAC ¶ 64.)

> The two working in concert show a shared discriminatory animus and a tacit agreement [between] supervisory staff to deprive Plaintiff of the equal protection of the laws, in violation of 42 U.S.C. § 1985(3). (SAC ¶ 65.)

AHP argues that the SAC makes only conclusory allegations, focusing on the allegations in paragraphs 64 and 65. (Doc. No. 51 at 4–7 ("Plaintiff has not pled the bare minimum alleging *specific facts* that could give rise to an inference of collusion or conspiracy." (emphasis in original)).) Without citing specific paragraphs of the SAC, the plaintiff responds that he has stated a claim for conspiracy. First, the plaintiff states that the SAC "alleges that AHP and Addus 'worked in concert' and 'shared a discriminatory animus' to deprive Plaintiff of the opportunity to continue his employment and contract with Addus." (Doc. No. 61 at 4.) However, allegations that merely state certain elements of a conspiracy claim, like those the plaintiff refers to, are paradigmatically insufficient to state a claim. *See Caraway v. CoreCivic of Tenn., LLC*, 98 F.4th 679, 683 (6th Cir.

6

2024) ("'Threadbare recitals of the elements of a cause of action' and 'conclusory statements' won't do." (first quoting *Iqbal*, 556 U.S. at 678; and then citing *Twombly*, 550 U.S. at 555)). The plaintiff next states that the SAC also alleges that "similarly situated white directors were offered new roles while Plaintiff was intentionally excluded from consideration." (*Id.*) Taken together, the plaintiff argues that "[t]hese allegations are sufficient under *Twombly* and *Iqbal*."[2] (*Id.*) The court disagrees. "Merely alleging the existence of an agreement or conspiracy does not set forth 'a sufficient factual basis to establish any sort of "meeting of the minds" or to link any of the alleged conspirators in a conspiracy.'" *Weatherspoon v. Woods*, No. 16-1277, 2017 WL 3923335, at *4 (6th Cir. Feb. 24, 2017) (quoting *Amadasu*, 514 F.3d at 507).

The SAC does not plead facts with sufficient specificity to meet the "relatively strict" pleading standard. The SAC does not allege how the defendants conspired or what they agreed to do. It does not allege a meeting of the minds between the defendants that gave rise to a single plan or objective. By way of example, the SAC does not allege any discussion between the defendants,

---

[2] In addition, the plaintiff states that he has "included in the record a chain of e-mails between AHP and a third party investment banker who acted as a go-between between AHP and Addus discussing Plaintiff's and another employee's potential transfer, which align in time with his complaints of racial discrimination." (Doc. No. 61 at 5.) The plaintiff provides no citation, and "judges are not like pigs, hunting for truffles buried in the record." *Murthy v. Missouri*, 603 U.S. 43, 67 n.7 (2024) (alterations adopted) (quoting *Gross v. Cicero*, 619 F.3d 697, 702 (7th Cir. 2010)). In any case, according to the plaintiff, this evidence "suggest[s] that Defendants acted jointly to ensure his exclusion from continued employment." (Doc. No. 61 at 5.) The court infers that the plaintiff means to refer to fifteen pages of emails he attached as an exhibit to both his Reply brief in support of his Motion for Joinder and his Motion to Compel Discovery Responses. (Doc. Nos. 29-1, 31-6 ("Emails").) The court has found only two references to the plaintiff in the Emails, which are contained within a June 2, 2023 email exchange among parties whose email addresses indicate that they all work for AHP. (Doc. No. 29-1 at 8.) Without further explanation, this evidence does not advance the plaintiff's conspiracy claim even if the court were to consider it. *Accord Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023) ("[T]he court may, in undertaking a 12(b)(6) analysis, take judicial notice of 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" (quoting *Golf Vill. N., LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021)).

7

let alone an agreement. The SAC does not refer to a single Addus employee by name or title who would have been party to such discussions with AHP. And while the SAC alleges that certain AHP employees discriminated against VanStory, it does not allege any non-conclusory facts to support an inference that they, or any employee of AHP, ever spoke with an employee of Addus. (*See, e.g.*, SAC ¶¶ 13–17 (describing discrimination VanStory suffered while at AHP).) Conclusory statements that the defendants conspired do not state a conspiracy claim. *Twombly*, 550 U.S. at 557 (noting that courts need not accept terms such as "conspiracy" or "agreement" as a "sufficient basis for a complaint" without more specific allegations (quoting *DM Rsch., Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)). *See also, e.g.*, *Odish v. Peregrine Semiconductor, Inc.*, No. 13-cv-14026, 2015 WL 1119951, at *13 (E.D. Mich. Mar. 11, 2015) ("A plaintiff cannot simply incant the magic words 'conspiracy' or 'agreement' in order to adequately plead a conspiracy claim." (quoting *Buetow v. A.L.S. Enters., Inc.*, 564 F. Supp. 2d 1038, 1041 (D. Minn. 2008)). Accordingly, the court will dismiss Count IV against AHP, for conspiracy to interfere with civil rights.

### 2. *Addus*

Addus, with the benefit of the briefing on AHP's Motion to Dismiss, argues in the alternative that VanStory cannot bring a Section 1985(3) conspiracy claim to vindicate rights protected by either Title VII *or* Section 1981 and that VanStory has alleged only conclusory facts in support of his conspiracy claim. (Doc. No. 63 at 7–9.) VanStory's three-sentence response merely "incorporates by reference the arguments previously set forth in his Response to AHP's Motion to Dismiss regarding the viability of the § 1985(3) claim." (Doc. No. 65 at 2–3.)[3] Addus

---

[3] The court puts to the side whether the plaintiff's incorporation by reference of his discussion of Section 1981 as a basis for a Section 1985(3) claim, in his Response to AHP, suffices as a response to Addus' argument on this point, for purposes of waiver. *Cf. Young v. Owens*, 577 F. App'x 410, 417 (6th Cir. 2014) ("Moreover, plaintiffs offer no response to the defense argument

8

argues that the SAC's claims regarding conspiracy are conclusory and fail to state a claim. (Doc. No. 63 at 8–9.) In addition, Addus "fully incorporates the arguments made by Defendant AHP in its motion." (*Id.* at 8.) For the same reasons VanStory's Section 1985(3) conspiracy claim fails against AHP, it fails against Addus. Accordingly, The court will dismiss Count IV against Addus.

### B. Tennessee Human Rights Act

Count I, for race discrimination and racial harassment, and Count II, for retaliatory discharge from employment, are brought against both defendants under, as relevant here, the THRA. (SAC ¶¶ 51–60.) The THRA prohibits employers from discriminating on the basis of race, among other protected categories, and creates a private cause of action with a one-year statute of limitations. Tenn. Code Ann. § 4-21-401(a)(1); *id.* § 4-21-311(d) ("A civil action brought pursuant to the private right of action under this section must be filed . . . within one (1) year after the alleged discriminatory practice ceases.").

Addus moves to dismiss the THRA claims in Counts I and II as time-barred. Addus states that the alleged discrimination ceased in June 2023, when Addus failed to hire VanStory after it acquired the Subsidiaries, or, in the alternative, and at the latest, on August 4, 2023, when AHP terminated him. (Doc. No. 63 at 4–5.) Addus argues that the THRA claims are time-barred if they accrued on the earlier date, because VanStory filed this action on August 2, 2024, which was more than one year after June 2023. (*Id.*) Addus argues that VanStory's THRA claims against it are time-barred even if the latter date applies because, while the original complaint was filed within the one-year limitations period, Addus was not added as a party until after the limitations period expired, so the claims against Addus do not relate back to the original complaint. (*Id.* at 5–6.)

---

that a civil conspiracy claim brought pursuant to § 1985(3) cannot be based on a deprivation of rights guaranteed by § 1981(a)." (citing *Stewart v. Com. Vehicles of S. Fla., Inc.,* 366 F. App'x. 41, 42 (11th Cir. 2010)).

9

VanStory responds that the statute of limitations did not begin to run until May 2025, when AHP revealed through discovery Addus' involvement in the decision not to hire him. (Doc. No. 65 at 1–2.) He argues that, because "AHP's nondisclosure [of Addus' role] prevented Plaintiff from discovering that Addus was a decision-maker," he "could not have known that Addus caused his injury until AHP revealed this information" in discovery in May 2025. (*Id.* at 2.) That is, "AHP's concealment prevented earlier accrual." (*Id.*) The court construes the plaintiff's brief as arguing that, under the discovery rule, the statute of limitations was tolled until he knew or should have known about Addus' involvement and, in the alternative, that the doctrine of fraudulent concealment tolled the statute of limitations. (*See id.* at 1 ("A claim under the THRA accrues only when the plaintiff knows, or reasonably should know, both that he has been injured and who caused the injury. Plaintiff had no such knowledge here, because AHP affirmatively concealed Addus's decision-making role until discovery in May 2025.").) Addus responds that the discovery rule does not apply to THRA claims and that the doctrine of fraudulent concealment does not apply because, among other reasons, VanStory contends that AHP only, and not Addus, concealed information from him. (Doc. No. 66 at 1–4.)

A court exercising supplemental jurisdiction over state law claims, as here, applies the law of the forum state as though it were exercising diversity jurisdiction. *Cook v. All State Home Mortg., Inc.*, 329 F. App'x 584, 588 (6th Cir. 2009) (citing *Chandler v. Specialty Tires of Am. (Tenn.), Inc.*, 283 F.3d 818, 823 (6th Cir. 2002)). Courts sitting in diversity apply the law of the forum state when resolving statute of limitations questions. *Swanson v. Wilson*, 423 F. App'x 587, 592 (6th Cir. 2011) (citing *Atl. Richfield Co. v. Monarch Leasing Co.*, 84 F.3d 204, 205 (6th Cir. 1996)). Thus, "[s]tate law (not federal law) determines the accrual date of state claims in federal court." *Coleman v. Hamilton Cnty. Bd. of Cnty. Comm'rs*, 130 F.4th 593, 604 (6th Cir. 2025)

10

(citing *Mod. Holdings, LLC v. Corning, Inc.*, Nos. 23-5612/5645, 2024 WL 4287900, at *3 (6th Cir. Sept. 25, 2024)). The court will address the discovery rule and then fraudulent concealment. Addus bears the burden to prove the statute of limitations defense. *Reguli v. Russ*, 109 F.4th 874, 879 (6th Cir. 2024).

### 1. The Discovery Rule

Under the "occurrence rule," a claim accrues, and the relevant statute of limitations begins to run, when the plaintiff has "a complete cause of action and can sue on the claim in court." *Mod. Holdings*, 2024 WL 4287900, at *3 (citing *Reguli*, 109 F.4th at 879). Under the "discovery rule," by contrast, courts "push back the start date to when the plaintiff knew or should have known certain facts about the claim." *Id.* (citing *Reguli*, 109 F.4th at 879). The court assumes without deciding that the discovery rule applies to THRA claims.

While the discovery rule does not mandate that a cause of action "accrues only when a plaintiff knows *all* of the facts surrounding alleged wrongdoing," *Hubbard v. Evolution Wireless, Inc.*, No. 2:19-cv-234, 2020 WL 1644512, at *5 (E.D. Tenn. Apr. 2, 2020), the Tennessee Supreme Court has stated that the discovery rule incudes "not only the discovery of the injury but also the discovery of the source of the injury," *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 458–59 (Tenn. 2012) (citing *Sherrill v. Souder*, 325 S.W.3d 584, 595 (Tenn. 2010)).[4]

---

[4] The court will not parse the meaning of "source of the injury," as used in *Redwing*. The plaintiff states that, under the discovery rule, a claim does not accrue until a plaintiff knows or should know the "identity of the party responsible for the injury." (Doc. No. 65 at 2.) However, at least in the products liability context, the Sixth Circuit has cautioned against this expansive reading. *Cahio v. Drexel Chem. Co.*, No. 21-5036, 2022 WL 1698386, at *3–4 (6th Cir. May 27, 2022) (explaining that, under Tennessee's discovery rule, it is "not the standard, at least for product liability cases," that "a cause of action for personal injury does not accrue until the plaintiff knows, or reasonably should know, the identity of the tortfeasor," as distinct from "knowledge that a product caused the injury").

11

The purpose of the discovery rule is to "alleviate the intolerable result of barring a cause of action by holding that it 'accrued' before the discovery of the injury or the wrong." *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982). For example, in *Foster v. Harris*, the plaintiff became ill in Fall 1975 and received a diagnosis of serum hepatitis in January 1976. *Id.* at 304. The plaintiff and his physicians "conducted a diligent search in an effort to determine plaintiff's contact with serum hepatitis," but could not determine where he contracted it. *Id.* However, the plaintiff's dentist revealed, during a July 1976 appointment, that he had been infected with serum hepatitis during the plaintiff's October 1975 visit and had intermingled their blood when he cut his own finger and the plaintiff's lip. *Id.* The Tennessee Supreme Court held that, even though the plaintiff had discovered his *illness* in January 1976, the statute of limitations had not yet begun to run then because the plaintiff knew "neither the existence of nor the identity of a tort feasor." *Id.* at 304– 05. That is, when the plaintiff received his diagnosis in January 1976, all that he "discovered . . . was the name of the disease." *Id.* at 305. But that "discovery did not reveal that he contracted it through a negligent act or who the tort feasor might be." *Id.*

In *Foster*, the plaintiff had no reason to suspect that his dentist, or any negligent party, was responsible for his illness, despite diligent effort. But the discovery rule "does not necessarily delay the accrual of the statute of limitations until the plaintiff has actual knowledge of a defendant's identity," because a plaintiff "cannot simply wait for information regarding a potential defendant to come to them." *Bartsch v. Premier Orthopaedics & Sports Med., PLC*, No. M2024-00971-COA-R3-CV, 2025 WL 2318488, at *4 (Tenn. Ct. App. Aug. 12, 2025) (first citing and then quoting *Grindstaff v. Bowman*, No. E2007-00135-COA-R3-CV, 2008 WL 2219274, at *6 (Tenn. Ct. App. May 29, 2008)), *permission to appeal denied* (Tenn. Nov. 19, 2025). Rather, the "'cause of action accrues' and the limitations period begins to run 'when the plaintiff knows or in the

12

exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct.'" *Martin v. Univ. of Tenn.*, No. 3:24-cv-75-KAC-JEM, 2025 WL 790936, at *4 (E.D. Tenn. Mar. 12, 2025) (quoting *Fahrner v. SW Mfg.*, 48 S.W.3d 141, 143 (Tenn. 2001)).

In this case, even if VanStory did not know that Addus was responsible for the allegedly unlawful decision not to hire him, he had "actual knowledge of 'facts sufficient to put a reasonable person on notice that he . . . ha[d] suffered an injury as a result of wrongful conduct.'" *Redwing*, 363 S.W.3d at 459 (quoting *Carvell v. Bottoms,* 900 S.W.2d 23, 29 (Tenn. 1995)). That is, notwithstanding VanStory's argument otherwise, he was on inquiry notice that Addus, the company he knew did not hire him, was at least partially responsible for the allegedly unlawful decision not to hire him. *Cf. Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 701 (6th Cir. 2022) (en banc) ("If a plaintiff has *no reason* to know who injured them, their claim has not accrued.") (emphasis added). VanStory had notice of the injury and the parties likely responsible, at the latest, when AHP terminated him and he had not been hired by Addus, in August 2023. The plaintiff does not respond to Addus' argument that the claims against Addus, which the plaintiff initially sought leave to add as a party in May 2025 (Doc. No. 25), do not relate back to the original complaint. Accordingly, even assuming that the discovery rule applies to THRA claims, it does not aid his argument.

### 2. *Fraudulent Concealment*

The fraudulent concealment doctrine also permits the tolling of statutes of limitation. *Smith v. Hilliard*, 578 F. App'x 556, 566 (6th Cir. 2014) (citing *Redwing,* 363 S.W.3d at 460–61). When it applies, fraudulent concealment tolls the running of the statute of limitations "until the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or

13

her claim." *Redwing*, 363 S.W.3d at 463 (citing *Fahrner*, 48 S.W.3d at 145). To establish that the doctrine applies, the plaintiff must show:

> (1) that the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so; (2) that the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence; (3) that the defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and (4) that the defendant concealed material information from the plaintiff by withholding information or making use of some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry.

*Id.* at 462–63 (citations and internal quotation marks omitted). Crucially, it is the "concealment by the party perpetrating it, unmixed with fault or negligence on the part of him who complains," that gives rise to the doctrine's applicability. *Phillips v. Phillips*, 526 S.W.2d 439, 440 (Tenn. 1975) (quoting *Woodfolk v. Marley*, 40 S.W. 479, 480 (Tenn. 1896)). In *Cahio v. Drexel Chemical Company*, for example, agricultural workers alleged that they had been poisoned by pesticides the defendant manufactured and argued that the fraudulent concealment doctrine applied. *Cahio*, 2022 WL 1698386, at *1, 5. But, as the Sixth Circuit explained, "[m]ost of the plaintiffs' allegations concern actions taken by their employers, not Drexel [the pesticide manufacturer]." *Id.* at *5. Because the plaintiffs did not show that the defendant took any affirmative steps to conceal its identity, as opposed to other parties, the plaintiffs could not invoke the fraudulent concealment doctrine to toll the relevant statute of limitations. *Id.*

Addus argues that, for the fraudulent concealment doctrine to toll the statute of limitations for the claims against it, the plaintiff would have to show that *it* took affirmative steps to conceal the plaintiff's injury. (Doc. No. 66 at 3–4.) As the court has explained, and as Addus argues, the SAC alleges very few facts regarding Addus, and certainly no facts that could support the application of the fraudulent concealment doctrine. VanStory, for his part, makes explicit that it was AHP, not Addus, that allegedly fraudulently concealed information regarding Addus' role in

14

this case. (*See* Doc. No. 65 at 1 ("AHP affirmatively concealed Addus's decision-making role until discovery in May 2025."); *id.* at 2 ("AHP's nondisclosure prevented Plaintiff from discovering that Addus was a decision-maker."); *id.* at 3 ("AHP's concealment prevented earlier accrual.")) Neither the fraudulent concealment doctrine nor the discovery rule tolled the TRHA claims against Addus. Accordingly, they will be dismissed.

## V. CONCLUSION

VanStory has not stated a Section 1985(3) conspiracy claim against either defendant, so Count IV, as to both defendants, will be dismissed. And because neither the discovery rule nor fraudulent concealment tolled the one-year statute of limitations, VanStory's THRA claims in Count I–II against Addus are time-barred and will be dismissed.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge

15