IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **MICHAEL VANSTORY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**AMERICAN HEALTH PARTNERS MANAGEMENT, LLC and ADDUS HEALTHCARE, INC.**<br><br>**Defendants.** | ) | **Case No. 3:24-cv-00945**<br><br>**Judge Trauger**<br><br>**JURY DEMAND** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AMERICAN HEALTH PARTNERS MANAGEMENT'S LLC'S MOTION TO EXCLUDE TESTIMONY OF AVERY THOMPSON**

Defendant American Health Partners Management, LLC ("American Health Partners" or "AHP") respectfully moves this Court to exclude the expert testimony and report of Avery Thompson, pursuant to Federal Rules of Civil Procedure 26 and 37 and Federal Rules of Evidence 702 and 403. Mr. Thompson's proposed testimony fails every threshold requirement for expert admissibility: his qualifications are woefully inadequate, his methodology is unreliable and incomplete, his opinions are unsupported by sufficient facts or data, and his report will serve only to mislead the jury and unfairly prejudice Defendants.

## SUMMARY OF ARGUMENT

Mr. Thompson's own deposition testimony confirms that he is spectacularly unqualified to render the opinions he proffers. He holds no college degree. He has never attended any training specific to Microsoft Office applications. This is the first case in which he has ever been retained to analyze Excel or Microsoft Office data. He has never previously prepared a report involving

Microsoft Office products. He has never been qualified as an expert in a civil case—his only prior expert testimony was as a police officer in criminal narcotics cases. And he holds no active forensic certification relevant to this engagement.

Worse still, Mr. Thompson candidly admitted at deposition that his analysis cannot tell the Court or a jury whether a single cell value, row, or column in any document was actually changed. He conceded that his SHA-256 hashing methodology cannot identify what was modified—only that metadata timestamps changed. He acknowledged that numerous innocuous activities—including opening a file, AutoSave functions, or sharing a document through a shared drive—can trigger the same "modification" timestamp his report flags. He did not perform the comparative analysis that would be necessary to determine whether any substantive content actually changed—a step his own report recommends but that he never undertook.

In short, Mr. Thompson's report tells the jury nothing of value. It cannot establish what, if anything, was changed in any document. It cannot rule out innocent explanations for the metadata changes it identifies. And the undisputed evidence shows that the content of the documents is identical to the originals. The only purpose this report could serve is to insinuate to the jury—without any evidentiary basis—that defense counsel tampered with evidence. That is precisely the type of unfair prejudice Rule 403 exists to prevent.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts of this case have been fully briefed by the Defendants in their respective Motions for Summary Judgment and supporting memoranda. Plaintiff Michael VanStory was hired as American Health Partners's National Director, Sales and Marketing and began working in that capacity on February 21, 2022. Mr. VanStory's employment with American Health Partners was terminated after American Health Partners sold its home health and hospice entities to Addus

Healthcare, Inc. ("Addus"), which resulted in the loss of other jobs, in addition to Mr. VanStory's. Defendant vehemently denies that Mr. VanStory was singled out or discriminated against in any way. Plaintiff retained Avery Thompson as a purported expert and provided his five-page report dated April 23, 2026, which is attached as Exhibit 1 (the "Report"). (Ex. 2 - Thompson Dep. at 21:2-8)[1].

The Report standing alone is woefully inadequate to be admissible expert testimony under the Federal Rules of Evidence and the Local Rules of Court. This became even clearer after Mr. Thompson's discovery deposition, which was conducted on July 8, 2026. His deposition testimony revealed fundamental deficiencies in his qualifications, methodology, and opinions that independently and collectively mandate exclusion of his testimony under Rules 702 and 403.

## LAW AND ARGUMENT

### I. Mr. Thompson's Report Should be Excluded Under Federal Rules of Civil Procedure 26 and 37.

Plaintiff has not complied with Rule 26 for its expert disclosures. Plaintiff provided Mr. Thompson's expert report, but the disclosures are deficient in multiple respects. The report does not include a list of all publications authored in the previous 10 years—because Mr. Thompson has never authored any publications whatsoever. (Thompson Dep. at 18:4-8). The report does not include a list of all other cases in which, during the previous 4 years, Mr. Thompson testified as an expert at trial or by deposition. The report does not include a statement of the compensation to be paid for the study and testimony in the case—Mr. Thompson himself testified he did not know his compensation rate until his deposition. Fed. R. Civ. P. 26(a)(2)(B).

[1] At the time of this filing, only the rough draft of Mr. Thompson's deposition was available. The rough draft is attached in its entirety since it is a relatively short (82 pages) deposition. Counsel for Defendant will supplement with the filing of the official transcript once it is available.

These failures are not trivial. Mr. Thompson confirmed at deposition that he has zero publications. (Thompson Dep. at 18:4-8). He confirmed he has never been qualified as an expert in a civil case. (Thompson Dep. at 71:3-5). His report includes no curriculum vitae and no disclosure of his rate of compensation. These omissions are neither substantially justified nor harmless, and exclusion is warranted under Rule 37(c).

### A. Rule 26(a)(2) Sets Forth Disclosure Requirements and Rule 37 Enforces the Requirements.

Federal Rule of Civil Procedure 26(a)(2) provides that a party must disclose to other parties the identity of its expert witnesses. Fed. R. Civ. P. 26(a)(2)(A); *RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 668 (6th Cir. 2024). The "disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case[.]" Fed. R. Civ. P. 26(a)(2)(B). The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Rule 37(c)(1) states that "[i]f a party fails to provide information [...] as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37 requires "absolute compliance" with Rule 26(a). *Storrs v. U. of Cincinnati*, 2018 U.S. Dist. LEXIS 17451, at *25 (S.D. Ohio Feb. 2, 2018). The sanction of

exclusion is automatic and mandatory unless the sanctioned party can show that the omissions were either justified or harmless. *Id.* The burden of proof is on the potentially sanctioned party. *Id.*

Here, Plaintiff's expert disclosures were due on May 1, 2026. (Doc. 68). Plaintiff's expert disclosures did not include the expert's qualifications, including a list of all publications authored in the previous 10 years, a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition, and a statement of the compensation to be paid for the study and testimony in the case, as required by Rule 26(a)(2)(B). Mr. Thompson's deposition confirmed there is good reason for these omissions: he has no publications, no prior civil case testimony, and did not even know his own compensation rate. These are not innocent oversights—they reflect the reality that Mr. Thompson lacks the credentials, experience, and track record that Rule 26 requires be disclosed. Plaintiff's failure to comply with Rule 26(a)(2) has prejudiced Defendant, as Defendant was not given information that it reasonably needs to prepare for depositions, cross examinations, and its overall defense in this case.

II. **Avery Thompson's Testimony Should be Excluded Under Rule 702.**

Mr. Thompson's opinions and proposed testimony violate every element of the standard for admissibility set out by Federal Rule of Evidence 702. Under Rule 702, an expert's opinion is admissible only if "[t]he proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. All four elements must be met. The Supreme Court has recognized that "implicit in the rule is a district court's gatekeeping responsibility, 'ensuring that an expert's testimony both rests on a reliable

foundation and is relevant to the task at hand.'" *Food Lion, LLC v. Dean Foods Co. (In re Southeastern Milk Antitrust Litig.)*, 739 F.3d 262, 277 (6th Cir. 2014) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). Mr. Thompson's testimony fails each of these requirements.

A. **Thompson's Testimony Will Not Help the Trier of Fact.**

Mr. Thompson's five-page report provides nothing that will assist the jury in understanding any fact at issue in this case. His sole conclusion is that six Excel documents show post-creation "modification" timestamps associated with user accounts "JK Simms" or "Lynn D. Robertson." But Mr. Thompson conceded at deposition that he cannot tell the jury what was modified:

> Q. [W]ould you be able to tell a court or a jury whether a single cell value, row, column in these documents were changed?
> A. . . . At the moment, no.
>
> (Thompson Dep. at 56:22–57:3)

Mr. Thompson further admitted that he has "no idea" what the modification activity was:

> Q. You have no idea what the modification activity was?
> A. I do not.
>
> (Thompson Dep. at 80:8-10).

An expert whose testimony amounts to "something happened to the metadata of these files, but I cannot tell you what, why, or whether any actual content changed" provides nothing beyond what any layperson could observe by looking at a file's properties. Indeed, it provides less—because a layperson would at least open the file and compare it, which Mr. Thompson never did. This testimony does not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). As the Sixth Circuit has held, while the "relevancy bar is low," the proffered evidence must "logically advance[] a material aspect of the proposing party's case" to be considered relevant. *United States v. LaVictor*, 848 F.3d 428, 442 (6th Cir. 2017); *see also*

*United States v. Higgins*, 2023 U.S. App. LEXIS 26680, at *6-7 (6th Cir. 2023) (applying this standard). Mr. Thompson's testimony does not logically advance any material aspect of Plaintiff's case—it cannot establish that any document content was changed, cannot rule out innocent explanations, and cannot connect any purported modification to any claim or defense in this litigation.

Moreover, the fact that these documents were "modified" (in the metadata sense) is not a fact in dispute. Defendants have never denied that metadata timestamps exist. What matters is whether the content of the documents was altered—and on that question, Mr. Thompson offers absolutely nothing. "[O]pinion testimony that would confuse the jury violates Rule 702's requirement that such testimony assist the trier of fact in understanding the evidence or in determining a fact in issue." *Higgins*, 2023 U.S. App. LEXIS 26680, at *7-8. That is precisely the situation here: Mr. Thompson's report uses the word "modified" without explaining that it refers only to metadata timestamps—not to changes in document content—and will inevitably confuse the jury into believing that defense counsel altered the substance of the documents.

B. **Thompson's Testimony is Not Based on Sufficient Facts or Data.**

Mr. Thompson's opinions are based on a woefully incomplete factual foundation. He admitted the following critical gaps in his analysis:

First, Mr. Thompson did not review the unmodified versions of the documents that Defendants produced. (Thompson Dep. at 55:3-7). Despite being provided documents that would have allowed a direct comparison, he never examined them. This is fatal: without comparing the "modified" versions to the originals, Mr. Thompson cannot opine on whether any substantive change occurred.

Second, Mr. Thompson did not perform any comparative analysis of the documents:

> Q. Do you have any way to know what was modified in these documents?
> A. A comparative analysis would need to be completed. I don't have anything for comparative analysis.
> Q. So is the answer to that no?
> A. The answer is no.
>
> (Thompson Dep. at 52:5-14).

Third, Mr. Thompson did not investigate whether AutoSave was enabled on the relevant user accounts—despite acknowledging that AutoSave can trigger the very modification timestamps his report identifies. (Thompson Dep. at 58:19–59:4; 79:20–80:2).

Fourth, Mr. Thompson is unfamiliar with iManage or any law firm document management system and therefore cannot assess whether routine document handling within such systems could explain the modification timestamps. (Thompson Dep. at 74:12-20).

Fifth, Mr. Thompson did not review the complaint, any discovery responses, or any other materials that would inform him about the issues in this case. (Thompson Dep. at 75:5-12). He does not even know the total number of documents produced in this litigation. Thompson Dep. at 75:13-15.

Sixth, Mr. Thompson was directed to examine only a handful of specific documents selected by Plaintiff's counsel, out of the entire production. (Thompson Dep. at 23:8-12). He exercised no independent judgment about what to examine.

An expert opinion "must be based on sufficient facts or data." Fed. R. Evid. 702(b). Mr. Thompson's opinion rests on a deliberately narrow slice of available information, ignores readily available comparison documents, and declines to investigate the most obvious innocent explanations for the timestamps he flags. This is the antithesis of a rigorous, fact-based analysis. As the Supreme Court has emphasized, "[t]he requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." *Daubert v. Merrell Dow*

*Pharms., Inc.*, 509 U.S. 579, 590 (1993). The Sixth Circuit has likewise held that an expert's opinion must use "valid facts to be reliable" and that facts can be "undependable for numerous reasons, including actual information that is of poor quality." *Food Lion, LLC v. Dean Foods Co. (In re Southeastern Milk Antitrust Litig.)*, 739 F.3d 262, 281 (6th Cir. 2014) (discussing *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993)). Here, the information underlying Mr. Thompson's opinion is not merely poor quality—it is fundamentally incomplete. He chose not to examine the unmodified originals, chose not to perform a comparative analysis, and chose not to investigate alternative explanations. His opinion is built on a foundation of willful ignorance.

C. **Thompson's Methodology is Not Reliable.**

The *Daubert* framework requires courts to evaluate whether an expert's methodology is reliable by considering (1) whether the theory or methodology can be and has been tested; (2) whether it has been subjected to peer review; (3) whether it has a known or potential rate of error; and (4) whether it has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 593-94. Mr. Thompson's methodology fails on every count.

The entire "Methodology" section of Mr. Thompson's report consists of eight sentences. Thompson himself admitted this was merely a "summary" that omitted steps:

> Q. So there is other steps or aspects that were taken that aren't included in this methodology section?
> A. There is other steps that were taken place. This is just kind of summary of the methodology and not necessarily a line-by-line description of all actions.
>
> (Thompson Dep. at 24:22–25:4).

When asked whether he could identify any published forensic standard that would consider an eight-sentence methodology description complete and adequate, Mr. Thompson admitted: "Off the top of my head, I cannot." (Thompson Dep. at 25:12-16).

Mr. Thompson does not know whether his methodology has been subjected to peer review:

Q. Do you know if this methodology has been subject to peer review?
A. . . . Well, let me clarify. To full peer review? I'm not sure.
Q. Do you know if this methodology has been published in any peer-reviewed publication?
A. I don't know.

(Thompson Dep. at 32:4-14).

Mr. Thompson does not know the error rate of his methodology:

Q. [D]o you know if this methodology has an error rate?
A. I do not know if it has an error rate.

(Thompson Dep. at 35:8-12).

Mr. Thompson himself described his analysis as "pretty standard"—not cutting-edge science, but a basic process that ***any technically literate person could perform***. (Thompson Dep. at 31:15-18). This underscores that his testimony would not assist the jury beyond what a lay witness could provide.

Most critically, Mr. Thompson's SHA-256 hashing methodology is fundamentally incapable of answering the question it purports to address. He admitted:

Q. Can SHA-256 tell you how a document was modified?
A. No, ma'am.
Q. Can SHA-256 tell you what specific content within a file was changed?
A. No, ma'am.
Q. So SHA-256 can't determine whether a cell value, a row, a column, anything like that was changed, correct?
A. That is correct.

(Thompson Dep. at 29:2-14).

A methodology that cannot answer the relevant question—whether document content was actually altered—is not a reliable methodology for the opinions Mr. Thompson seeks to offer. The Sixth Circuit has upheld the exclusion of expert testimony where the proffered opinions do not address the material issues in the case. *Higgins*, 2023 U.S. App. LEXIS 26680, at *9-11 (affirming

exclusion of expert opinions that were "irrelevant to his prosecution" and that sought to address issues not material to the underlying claims). Similarly, Mr. Thompson's methodology—which can identify only metadata changes, not content changes—is irrelevant to any issue the jury must decide.

D. **Thompson Has Not Reliably Applied His Methods to the Facts.**

Even accepting that SHA-256 hashing is a valid methodology for some purposes, Mr. Thompson has not reliably applied it to the facts of this case. Section 9 of his own report recommends that "further comparative analysis" be performed. (Thompson Dep. at 59:18–60:5). Yet he never performed that analysis. His report thus reaches a conclusion—that documents were "modified"—while simultaneously acknowledging that additional work is needed to determine whether that finding has any significance.

Mr. Thompson admitted he did not attempt to determine what specific content, if any, was changed:

> Q. Did you attempt to determine what specific content, if any, was changed between the modified version and any other prior versions?
> A. No, ma'am.
>
> (Thompson Dep. at 51:15-19).

He also acknowledged that his report identifies only that "something was modified"—not what:

> Q. This report doesn't identify what was modified. It just identifies that something was modified, correct?
> A. It shows modification activity. But it does not show what was modified.
>
> (Thompson Dep. at 52:15-20).

An expert who stops his analysis halfway—who identifies a flag but refuses to investigate whether it signifies anything—has not reliably applied his methods to the facts. This is particularly

egregious where, as here, the expert's own report identifies the additional step that was needed, and the expert simply chose not to take it.

## III. Thompson Lacks Qualifications to Opine in This Area.

Rule 702 requires that expert testimony come from a witness "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Mr. Thompson lacks qualifications in every relevant dimension.

Education: Mr. Thompson's highest level of education is a high school diploma. He is currently enrolled in classes for an applied business degree but has not obtained any degree. (Thompson Dep. at 5:18–6:4; 66:8-12).

Training: Mr. Thompson has attended no training specific to Microsoft Office suite applications. (Thompson Dep. at 14:10-14). He has never taught any course related to analyzing Microsoft Office data. Thompson Dep. at 16:5-9.

Experience: This is the first case in which Mr. Thompson has been retained as an expert involving Excel or Microsoft Office data. Thompson Dep. at 19:22–20:4. He has never prepared a report specifically for Microsoft Office products before. Thompson Dep. at 20:8-12.

Certifications: Mr. Thompson could not confirm whether any of his certifications are currently active. His only confirmed active certification is for Cellebrite, a mobile device forensics tool he did not use in this case. (Thompson Dep. at 67:15–68:4). He holds no forensic license or active data forensic certification relevant to this engagement. (Thompson Dep. at 66:12–67:8).

Prior Testimony: Mr. Thompson has never been qualified as an expert in a civil case. (Thompson Dep. at 71:3-5). All of his prior expert testimony was as a police officer in criminal cases involving "cellular forensic, digital forensics, specifically to computer forensics[,] [t]he distribution of cocaine, the production of methamphetamine, distribution of marijuana."

(Thompson Dep. at 71:8-14). The gap between narcotics prosecution testimony and civil litigation involving Microsoft Excel metadata analysis could not be wider.

Publications and Professional Organizations: Mr. Thompson has never authored or coauthored any articles, papers, or materials in the field of digital forensics. (Thompson Dep. at 18:4-8).

Mr. Thompson's qualifications are limited to law enforcement forensics involving mobile phones and computers in criminal narcotics investigations. He has no education, training, certification, experience, or publications that would qualify him to opine on Microsoft Office document metadata in a civil employment dispute. Mr. Thompson has no practical experience in this area whatsoever. Mr. Thompson holds no degree, has no training in the relevant subject matter, and is offering opinions in a field in which he has never before been retained.

## IV. The Report Should Be Excluded Under Rule 403 Because Its Prejudicial Effect Substantially Outweighs Any Probative Value.

Under Rule 403, the Court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. "'Unfair prejudice' within [the context of Rule 403] means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997); *see also United States v. Higgins*, 2023 U.S. App. LEXIS 26680, at *16 (6th Cir. 2023) (applying same standard). Federal Rule of Evidence 403 "also plays a role" in the expert testimony inquiry because the court may exclude expert evidence whose probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." *United States v. LaVictor*, 848 F.3d 428, 444 (6th Cir. 2017); *Higgins*, 2023 U.S. App. LEXIS 26680, at *6-7.

Mr. Thompson's report has no probative value. Its sole conclusion—that certain documents show "modification" timestamps—tells the jury absolutely nothing about whether any document content was actually changed. Mr. Thompson admitted as much. The undisputed evidence confirms the documents are content-identical to their originals.

But the report's potential for unfair prejudice is enormous. Mr. Thompson himself acknowledged that the word "modified" could mislead a layperson:

> Q. [C]ould we agree that it could suggest to a layperson that the contents of a document were altered?
> A. I would agree that the term "modified" in its common definition may suggest that.

(Thompson Dep. at 64:8-14).

This is precisely the danger. A jury hearing that defense counsel's documents were "modified" will naturally infer that defense counsel tampered with evidence—a devastating (and untrue) inference in any case, and particularly in one where the documents are employment records central to the dispute. Mr. Thompson's report would inject an accusation of spoliation or evidence tampering into this case without any evidentiary basis. The Sixth Circuit has recognized that expert opinion testimony must be excluded when it would "confuse the issues" before the jury and inject irrelevant or misleading considerations into the proceedings. *See Higgins*, 2023 U.S. App. LEXIS 26680, at *8-9 (affirming exclusion of expert opinions that would "only distract[] the jury from the important questions at hand"). Here, the "important questions at hand" are whether Mr. VanStory was discriminated against—not whether defense counsel's routine handling of documents in the discovery process created innocuous metadata changes.

The prejudice is compounded by Mr. Thompson's inability to explain to the jury that "modified" in the metadata context does not mean what it means in common parlance. He admitted he did not know whether the modification activity was related to AutoSave (Thompson Dep. at

79:20–80:2), did not know whether simply changing a file name could account for it (Thompson Dep. at 80:12-18), and did not know whether the modification reflected any change to actual content at all. His report does not explain these alternative explanations. A jury presented with Mr. Thompson's conclusory findings—stripped of the context his deposition revealed—would be left with the misleading impression that defense counsel altered evidence.

Notably, Mr. Thompson was not even aware that this is a jury trial. (Thompson Dep. at 64:22–65:3). An expert who does not know the procedural posture of the case in which he is retained cannot be trusted to have considered the prejudicial impact of his conclusions.

In an effort to eliminate any confusion, counsel for AHP located the original documents (which do not show modification by JK Simms) and provided them to Plaintiff's counsel on June 1, 2026. When the bates-labeled documents are compared with the originals, there are no differences whatsoever in content. The files are identical in data content—no differences in cell values, rows, or columns. Mr. Thompson himself admitted that if the content is identical, then only metadata changed. (Thompson Dep. at 58:3-8). Despite this, Plaintiff still intends to use the report at trial—confirming that its only purpose is to create an improper inference of wrongdoing.

Because Mr. Thompson's report has no probative value on any issue in this case, but substantial potential to mislead the jury into believing defense counsel tampered with evidence, exclusion under Rule 403 is required.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant American Health Partners Management, LLC respectfully requests that the Court exclude the testimony and report of Avery Thompson in their entirety. Mr. Thompson is unqualified to offer expert testimony in this area, his methodology is unreliable, his opinions are unsupported by sufficient facts or data, he has not reliably applied his

methods to the facts of this case, and his report will serve only to mislead the jury and create unfair prejudice against Defendants. The Court should grant this Motion and enter an order excluding Mr. Thompson from testifying at trial.

Respectfully submitted,

*/s/ JK Simms*
James K. Simms, IV (BPR No. 21688)
Morgan J. Hartgrove (BPR No. 40262)
Thompson Burton, PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
Phone: (615) 465-6005
jk@thompsonburton.com
morgan@thompsonburton.com

*Counsel for Defendant American Health Partners Management, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on this 31st day of July 2026. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties listed below. Parties may access this filing though the Court's electronic filing system.

Tess Heisserer
611 Commerce Street, Suite 2611
Nashville, Tennessee 37203
(615) 401-8055
theisserer@heissererfirm.com

Keith D. Frazier
Darius Walker, Jr.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Truist Plaza
401 Commerce Street, Suite 1200
Nashville, TN 37219
(615) 254-1900
keith.frazier@ogletreedeakins.com
darius.walker@ogletreedeakins.com

*/s/ J.K. Simms*
James K. Simms, IV