**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MICHAEL VANSTORY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**AMERICAN HEALTH PARTNERS MANAGEMENT, LLC, and ADDUS HEALTHCARE, INC.,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 3:24-cv-00945**<br>**Judge Aleta A. Trauger** |

**MEMORANDUM**

There are six motions currently pending in this action. The two defendants, American Health Partners Management, LLC ("AHP") and Addus Healthcare, Inc. ("Addus"), have each filed motions for summary judgment (Doc. Nos. 94, 98), seeking dismissal of the remaining claims in the Second Amended Complaint ("SAC") (Doc. No. 48.) AHP has also filed a Motion to Exclude the Expert Testimony and Report of Avery Thompson ("Motion to Exclude") and an Unopposed Motion for Leave to File a Reply Brief that Exceeds the Page Limitation ("Motion for Leave"). (Doc. Nos. 102, 123.) The plaintiff, Michael VanStory, has filed a Motion for Spoliation Sanctions ("Spoliation Motion") and a Motion to Strike. (Doc. Nos. 104, 128.)

Before the court considers the pending summary judgment motions, it will first address the Spoliation Motion, the Motion to Exclude, the Motion for Leave, and the Motion to Strike. For the following reasons, the court will grant in part the Spoliation Motion, grant the Motion to Exclude, grant the Motion for Leave, and deny the Motion to Strike.

## I. BACKGROUND

### A. This Case

The facts are drawn from the SAC, the prior rulings and opinions issued by the court in this case (Doc. Nos. 46–47, 90–91), and the various factual exhibits in the record. VanStory is a biracial former employee of AHP, a healthcare management company based in Tennessee. (SAC ¶¶ 1–2, 6, 8.) VanStory served as the National Director of Sales for four AHP divisions, including American Quality Care and Tennessee Quality (the "Subsidiaries").[1] (Doc. No. 115-1 ¶ 1.) In June 2023, a separate healthcare management company—Addus—acquired the Subsidiaries in a stock sale transaction. (SAC ¶¶ 7, 9.) A number of legacy AHP employees were retained by Addus; VanStory, however, was not one of them.

VanStory alleges that he was subjected to racial discrimination and retaliation by AHP during his employment. (*Id.* ¶¶ 11–17, 21–24, 26–32.) He also alleges that Addus participated in this discrimination and retaliation. According to VanStory, Addus unlawfully refused to retain him as an employee and denied him employment after acquiring the Subsidiaries. (*Id.* ¶ 18.) Addus allegedly knew about VanStory's prior complaints of discrimination at AHP and denied him employment opportunities with the company because of his race and/or prior complaints about racial discrimination at AHP. (*Id.* ¶¶ 18. 40.)

In this employment discrimination action, the parties dispute (1) the reason that VanStory was not transferred to Addus after the sale; and (2) which entity decided that Vanstory would not be transferred to Addus. On the first question, the defendants have articulated multiple, non-

[1] VanStory was employed with AHP in this role from sometime in February 2022 until August 1, 2023. (Doc. Nos. 99-6; 115-1 ¶ 26.)

discriminatory explanations for why VanStory was not transferred to Addus. Initially, the defendants claimed that Addus was only interested in retaining local sales employees at the community level, which precluded VanStory from consideration because he was a national sales representative. (Doc. Nos. 115-6 at 3–4 (Addus representing in its EEOC position statement that only local sales employees were retained in the acquisition); 28-5 at 7 (APH responding that there "was not a fit" for VanStory inside Addus' "organization" because Addus' "sales functions" are structured "at the local level rather than on a national level").) Later, the defendants claimed that only corporate-level employees whose compensation was 100% "allocated" to the Subsidiaries were transferred to Addus. (Doc. No. 115-4 at 20:13–21 (Addus' corporate representative testifying that only employees "who were a hundred percent allocated to the service lines that Addus [was] acquiring" were retained); Doc. No. 115-5 at 203:1–5, 206:14–16 (AHP's chief operating officer, Robin Bradley, testifying that "Addus requested employees that were a hundred percent allocated and function inside . . . each of the two [acquired] divisions").)

On the second question, the record is less than clear as to who decided that VanStory would not transfer over to Addus as part of the acquisition. VanStory was listed on the final personnel transfer list created only days before the transaction closed. (Doc. No. 115-13.) AHP swears that the "decision" not to transfer VanStory "was solely made by Addus." (Doc. No. 28-5 at 7.) Addus, on the other hand, swears that the "decision not to transfer [VanStory]" was "made solely by AHP."[2] (Doc. No. 116-1 ¶ 20; *see also* Doc. No. 115-5 at 241:6–9 (Bradley suggesting that the decision about which employees to transfer was a joint decision made by APH and Addus).)

---

2 To add to the confusion, Addus' corporate representative, Cliff Blessing, testified that Addus actually made the decision about which employees to retain after the acquisition, with information supplied by AHP: "So Addus makes decisions on who Addus is going to hire. That's an Addus decision. There's [a carve-out] when there's employees that are straddled, that work for both the company that's being acquired and then the company that's being retained, there has to

Setting aside the reason why VanStory was not transferred and which entity made the decision, Addus' corporate representative testified that information about which employees to transfer was "shared" in "multiple ways" with APH during the acquisition's due diligence phase. (Doc. No. 115-4 at 26–27.) The information was "typically" conveyed to Addus in "verbal form" during "meetings" with APH or uploaded into the virtual data room set up for the transaction's due diligence phase. (*Id.* at 133.) It was also shared in emails exchanged between Addus and AHP's teams. (*Id.* at 26:23–25.) Based on its discussions and emails with APH, Addus' "teams" would then "circle up" and "internally start making the decisions" about which employees to retain. (*Id.* at 113, 133.) Addus also testified that "employment matters" were "of course" being "e-mailed" throughout the transaction process and that he was "sure" that VanStory's name was in "e-mails that are going back and forth" during the relevant time period (*i.e.*, between May 2023 and August 2023).[3] (*Id.* at 117:3–20, 118:1–15.)

**B. Addus Receives Notice of the Threat of Litigation on May 20, 2025**

On May 9, 2025, VanStory filed a motion seeking to join Addus as a party-defendant to this litigation (Doc. Nos. 25, 25-1), after APH identified Addus as the "sole" decisionmaker responsible for the decision not to transfer him.[4] (Doc. No. 28-5 at 7.) On May 12, 2025, VanStory

---

be kind of discussion and collaboration for those employees that kind of do both. And so, yes, Addus made the decision, but obviously using information from AHP about the job role and responsibilities related to the business that we're acquiring." (Doc. No. 115-4 at 129:13–25.)

[3] The parties seem to disagree slightly on the relevant timeframe during which emails discussing employee transfer decisions were exchanged. Without any evidence, VanStory asserts that the relevant timeframe is broader—from March 2023 through August 2023 (Doc. No. 105 at 2)—while Addus claims that the relevant timeframe is May 2023 through August 2023, relying on the testimony from Cliff Blessing (Doc. No. 115-4 at 116:16–20). The court will assume that the relevant timeframe is May 2023 through August 2023, as there seems to be some evidentiary basis for concluding that this is the relevant timeframe. (*Id.*)

[4] The exact date that Addus learned that VanStory planned to add Addus as a party-defendant in this litigation is not clear. Addus represents that it "did not learn the specifics of the claims in

also filed a charge of discrimination against Addus with the EEOC (Doc. No. 105 at 9–10), which was emailed to Addus's representatives on May 20, 2025. (*Id.* at 10.) On September 5, 2025, the court granted VanStory's motion to join (Doc. No. 46), and Addus was formally added as a party-defendant. (Doc. No. 48.)

Despite receiving notice of the EEOC charge on May 20, 2025, Addus did not issue a preservation notice (also called a "litigation hold") until October 29, 2025—162 days after receiving notice of the EEOC charge. (Doc. No. 115-4 at 102:16–22.) By the time Addus issued a preservation notice, all of the company's internal emails reflecting deliberations about employee transfer and retention decisions had been permanently deleted from the company's servers. (*Id.* at 117:3–20.) That is because the company's Email Retention Policy "automatically and permanently deletes Email Communications 2 years or older," unless those emails are preserved for some other reason.[5] ("Email Retention Policy," Doc. No. 105-2 at 5.)

Addus' destruction of its internal emails from this period violated its own Email Retention Policy. The company's Email Retention Policy provides that automatic deletion of emails at the two-year mark "shall be suspended immediately if the Company receives, is notified of, or reasonably anticipates a subpoena, investigative audit, legal process or government or regulatory investigation." (*Id.* at 6.) If such an event occurs, the Email Retention Policy provides:

---

the [SAC] until Plaintiff provided Addus' counsel with a courtesy copy of the [SAC] on September 15, 2025." (Doc. No. 110 at 2.) But the record suggests that Addus' counsel, Darius Walker, was on notice of the pending Motion to Join on August 5, 2025, at the earliest—*more than one month earlier*—because VanStory's counsel, Tess Heisserer, emailed Mr. Walker and disclosed the motion and her view that the undersigned was inclined to grant the motion. (Doc. No. 110-4 at 2.)

[5] VanStory has received *external* emails exchanged between Addus and AHP. These emails were produced by AHP. (Doc. No. 110 at 2.) The destroyed emails at issue—*internal* Addus emails sent between May 2023 and August 2023—constitute "Email Communications," as that term is defined in the Email Retention Policy to include "any communications, including attachments, sent by electronic means." (Doc. No. 105-2 at 3.)

> [T]he Company's legal counsel or other authorized Company employee shall notify those involved of the suspension of this Policy with regard to specified documents, which may include both Records and Non-Records. Once a person is notified of the Policy's suspension, he or she cannot destroy any of the specified documents until specifically informed by the Company's legal counsel or other authorized Company employee that the Policy, including the Record Retention Schedule, is again in force as it relates to those documents.

*Id*. Making matters worse, Addus concealed that internal company emails had been deleted for almost a year after the emails had been destroyed. The company did not disclose the destruction in its First Set of Interrogatory Responses, dated November 20, 2025, despite being asked to "[i]dentify all persons at Addus who reviewed, discussed, or received information referencing 'Michael VanStory,' his position, or his potential transfer, retention, or termination in connection with the sale of [the Subsidiaries]." (Doc. No. 105-4 at 5.) Instead, Addus represented that "it has no documentation responsive to this Interrogatory." (*Id.* at 6.) Nor did Addus disclose the destruction in its responses to various deficiency letters that VanStory sent to Addus in December 2025 and January 2026 that challenged the company's document production. (Doc. No. 105 at 14.) VanStory represents that it was "finally established" that the internal emails had been permanently deleted during the deposition of Addus' corporate representative on July 24, 2026—268 days *after* Addus issued its preservation notice on October 29, 2025. (Doc. No. 105 at 14.) VanStory now moves for sanctions based on Addus' failure to preserve its internal emails. (Doc. No. 104.)

## II. DISCUSSION

### A. The Spoliation Motion

#### *1. Whether Spoliation Occurred*

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Black v. Costco Wholesale Corp.*, 542 F. Supp. 3d 750, 752 (M.D. Tenn. 2021) (quoting *Billiter v. SP Plus*

*Corp.*, 329 F. Supp. 3d 459, 465 (M.D. Tenn. 2018)). Federal Rule of Civil Procedure 37(e) prescribes the remedies for failing to preserve electronically stored information ("ESI"). *See Kean v. Brinker Int'l, Inc.*, No. 3:22-cv-00885, 2024 WL 1815346, at *9 (M.D. Tenn. Apr. 25, 2024) ("Emails, by definition, qualify as [ESI], and a failure to preserve them is governed by Rule 37(e)."), *aff'd in relevant part,* 140 F.4th 759 (6th Cir. 2025). It states as follows:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>>
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). By its terms, Rule 37(e) requires an initial three-part showing: (1) ESI "that should have been preserved in the anticipation or conduct of litigation" was "lost"; (2) the party who had a duty to preserve the ESI "failed to take reasonable steps to preserve it"; and (3) the information "cannot be restored or replaced through additional discovery." *Adamczyk v. Sch. Dist. of City of Hamtramck Pub. Schs.*, 667 F. Supp. 3d 534, 556 (E.D. Mich. 2023) (citation omitted). Only if this initial showing is met will the court consider whether sanctions are warranted under subsections (e)(1) or (2). VanStory easily makes this initial showing, as detailed below.

The first prong is met because the internal emails that were lost "should have been preserved in the anticipation or conduct of litigation." Fed. R. Civ. P. 37(e). Rule 37(e) incorporates the common law "duty to preserve relevant information when litigation is reasonably

foreseeable." *Hargis v. Overton Cnty.*, No. 2:22-cv-00011, 2023 WL 8604139, at *7 (M.D. Tenn. Dec. 12, 2023) (quoting Fed. R. Civ. P. 37(e)). Here, Addus incurred a duty to preserve the emails when it received notice on May 20, 2025 that VanStory had filed the EEOC charge. *See Gomez v. Metro. Gov't*, No. 3:19-cv-00026, 2021 WL 3406687, at *3 (M.D. Tenn. Aug. 4, 2021) (finding that plaintiff's EEOC charge was one of the "triggering events" that placed the defendant on notice of "the threat of litigation" and imposed a duty on the defendant to preserve emails related to the plaintiff's claims); *Curcio v. Roosevelt Union Free Sch. Dist.*, 283 F.R.D. 102, 109 (E.D.N.Y. 2012) (defendant's duty to preserve evidence "arose no later than the time [the defendant] received Plaintiff's EEOC charge").

In its Response, Addus ignores the fact that it received notice of the EEOC charge in May 2025. (Doc. No. 110.) Instead, the company asserts that "it did not feel an obligation to preserve had been triggered" until it received a copy of the SAC on September 15, 2025. (*Id.* at 11.) To be clear, Addus' "feelings" are irrelevant as to whether the company incurred a legal duty to preserve evidence, which is an objective—not subjective—inquiry. *Byrd v. Alpha All. Ins. Corp.*, 518 F. App'x 380, 384 (6th Cir. 2013) ("Because Byrd *should have known* that the evidence may be relevant to future litigation, the first element of spoliation is met." (emphasis in the original) (internal quotation marks and citation omitted)); *Hargis*, No. 2:22-cv-00011, 2023 WL 8604139, at *9 (explaining that the existence of a duty to preserve evidence is an "objective" test that "does not look to" the party's "subjective intent"). As explained above, the objective evidence establishes that Addus incurred a duty to preserve the emails on May 20, 2025 when the company's representatives received the EEOC charge.

Addus' "feelings" argument is also misleading. By its own admission, the company subjectively anticipated the threat of future litigation as early as July 17, 2025—months earlier

than the date it now claims—as evidenced by the company's response to the EEOC charge.[6] In that response, the company recognized that VanStory's claims against the company were premised on allegations that "Addus discriminated against him on the basis of his color and race in that Addus failed to retain/offer him a position" and that "he was not retained/offered a position in retaliation for making a complaint" of discrimination while employed with AHP. (Doc. No. 115-6 at 3.) Even more telling, Addus acknowledged the possibility that it could be subject to discovery on these claims in a future litigation: the company noted, in the first paragraph of its response, that the submission did not "constitute a waiver of any objection Addus could have in response to *future discovery or information requests*, or to the introduction of evidence in any *subsequent proceeding*." (*Id.* at 1 (emphasis added).) The company certainly "felt" that litigation was on the horizon, but it nevertheless failed to issue a preservation notice or suspend its automatic deletion protocols for another 104 days.

Based on the evidence presented, the court concludes that Addus' duty to preserve relevant emails in connection with VanStory's claims was triggered on May 20, 2025. The service of the EEOC charge was sufficient to put Addus on notice of a duty to preserve documents (including ESI) related to VanStory's discrimination and retaliation claims.

As for the second prong, Addus claims that it did take reasonable steps and "promptly issued an internal litigation hold" after "Addus' addition to the lawsuit." (Doc. No. 110 at 2.) So, the company essentially argues that the preservation notice it issued on October 29, 2025—162 days *after* receiving service of the EEOC charge—establishes that the company took reasonable

---

6 It is not surprising that Addus' EEOC position statement shows that it anticipated future litigation, given that exhaustion of administrative remedies at the EEOC is a precondition to filing a Title VII suit. *See Zeller v. Canadian Nat'l Ry. Co.*, 666 F. App'x 517, 524 (6th Cir. 2016).

steps to preserve information and suspend its automatic deletion protocols. To the contrary, a delay of 162 days is not reasonable under the circumstances of this case. Addus' attempt to deflect responsibility and blame VanStory for its own preservation failures is not well taken. To add insult to injury, Addus blames VanStory for Addus' own destruction, complaining that "Plaintiff's counsel's failure to provide Addus with [a copy of the SAC], whether intentional or not, is the reason the Transaction emails were not preserved by Addus." (*Id.* at 15.) The duty to preserve Addus' internal emails rested with Addus alone.

Under these circumstances and without any other evidence to the contrary, the court finds that Addus "failed to take reasonable steps to preserve" the internal emails relevant to VanStory's claims. Fed. R. Civ. P. 37(e).

The third prong is also met. It is undisputed that the internal emails have been permanently deleted and cannot be retrieved. (Doc. No. 115-4 at 33:11–16, 117:9–20.) There is also no indication that those internal emails could "be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). These were contemporaneous emails exchanged between Addus' employees several years ago now. Any additional discovery, such as depositions of Addus witnesses, would likely not be able to rectify the loss of that contemporaneous documentary evidence.

As outlined above, the three-part showing has been satisfied. The court finds that Addus spoliated evidence by failing "to preserve electronically stored information." *Id.* The court must now determine whether sanctions under Rule 37(e)(1) or (e)(2) are appropriate here.

*2. What Sanctions Are Warranted*

Federal courts retain "broad discretion to craft proper sanctions for spoliated evidence" upon a finding that spoliation has occurred. *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009) (en banc). "Because failures to produce relevant evidence fall along a continuum of fault—ranging

from innocence through the degrees of negligence to intentionality, the severity of a sanction may, depending on the circumstances of the case, correspond to the party's fault." *Id*. at 652–53 (internal citation and quotation marks omitted). The sanctions available for spoliated evidence include "dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." *Id.* at 653.

VanStory requests that (1) the court give a permissive adverse inference instruction to the jury at trial as to the emails in question; and (2) award the attorneys' fees and costs associated with bringing the Spoliation Motion. (Doc. No. 105 at 23.) VanStory does not specify whether he seeks sanctions under Rule 37(e)(1) or (e)(2). (*Id.*) Addus opposes the requested relief, arguing that VanStory cannot establish that the company acted "culpably" because there was "no ill will or intent to deprive Plaintiff of any requested discovery." (Doc. No. 110 at 12–13.)

As the Sixth Circuit has recognized, the availability of sanctions under Rule 37(e)(1) and (e)(2) depends on whether the spoliation was "negligent" or "intentional." *Cox v. Ruckel*, No. 23-5698, 2025 WL 2603787, at *10 (6th Cir. Sept. 9, 2025). The "more serious sanctions" under Rule 37(e)(2)—such as an adverse-inference jury instruction—require the moving party to demonstrate that the spoliator "acted with the intent to deprive another party of the information's use in the litigation." *Id*. (quoting Fed. R. Civ. P. 37(e)(2)). The showing required to obtain Rule 37(e)(2) sanctions is demanding: the moving party must establish "specific intent" by the spoliator "to deprive another party of the information's use in the litigation." *EPAC Techs., Inc. v. Harpercollins Christian Publ'g, Inc.*, No. 3:12-cv-00463, 2019 WL 109371, at *15 (M.D. Tenn. Jan. 4, 2019).

The most severe sanctions available under Rule 37(e)(2) are not appropriate in this case. That is because there is no evidence that Addus deliberately destroyed its internal emails to deprive VanStory of evidence in this litigation. Addus' failure to preserve its internal emails was negligent,

perhaps grossly negligent, given that the company's own Email Retention Policy required suspension of its automatic deletion protocols by May 20, 2025, at the latest. *Dataflow, Inc. v. Peerless Ins. Co.*, No. 3:11-cv-1127, 2013 WL 6992130, at *7 (N.D.N.Y. June 6, 2013) (finding defendant's failure to preserve emails constituted "gross negligence" when the destruction of emails "was in direct violation of the [the defendant's] record retention policy in place . . . at the time of [the plaintiff's] claim")*, report and recommendation adopted in relevant part,* 2014 WL 148685 (N.D.N.Y. Jan. 13, 2014); *Musse v. King Cnty.*, No. C18-1736-JCC, 2021 WL 4709875, at *4 (W.D. Wash. Oct. 8, 2021) (finding that the defendant acted "culpably" by destroying relevant evidence in violation of its own record-retention policy). However, "[a] showing of negligence or even gross negligence will not do the trick" for Rule 37(e)(2) sanctions. *Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016).

VanStory claims that a permissive (as opposed to a mandatory) adverse-inference jury instruction is appropriate, relying on *Flagg v. City of Detroit*, 715 F.3d 165, 177–78 (6th Cir. 2013). (Doc. No. 105 at 24.) There, the Sixth Circuit affirmed a district court's order that a permissive adverse-inference instruction be given at any eventual trial for the defendant's destruction of emails after it was obligated to preserve them. *Flagg*, 715 F.3d at 177–78. VanStory's reliance on *Flagg* is not persuasive because the Sixth Circuit issued that decision before the 2015 amendments to Rule 37(e)(2). The 2015 amendments make clear that adverse-inference instructions—including *permissive* jury instructions—are available only if "the party acted with the intent to deprive another party of the information's use in the litigation."[7] Fed. R.

---

[7] The Advisory Committee Note explains that the 2015 amendment to Rule 37(e)(2) "rejects cases such as *Residential Funding Co. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002), that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence."

Civ. P 37(e)(2)(B) ("only upon finding that the party acted with the *intent to deprive* another party of the information's use in the litigation may: . . . (B) instruct the jury that it *may* or must *presume the information was unfavorable to the party* . . .") (emphasis added). Because there is no evidence that Addus intended to deprive VanStory's use of the email evidence in this case, the court declines to enter sanctions under Rule 37(e)(2).

The court will enter sanctions under Rule 37(e)(1). There is sufficient evidence to conclude that VanStory was prejudiced by Addus' destruction of its internal emails. Addus' corporate representative testified that emails discussing employment matters were exchanged during the relevant period, that VanStory's name was in those emails, and that the emails have been irretrievably destroyed. (Doc. No. 115-4 at 33:11–16, 117:3–20, 118:1–15.) Therefore, the court will order the following sanctions against Addus: if a trial becomes necessary in this case, VanStory may present evidence to the jury that the deleted Addus emails existed, that they should have been preserved, and that the emails were not preserved and cannot be retrieved. The court believes that such evidence is an appropriate remedy and does not rise to the level of a permissive adverse-inference jury instruction. The court will also order Addus to pay the reasonable attorneys' fees and costs associated with VanStory's Spoliation Motion.

The court acknowledges that Addus requested in its Response to the Spoliation Motion that the court disregard certain deposition recordings under Federal Rules of Civil Procedure 28(c) and 30(b)(3). (Doc. No. 110 at 2–8.) The court declines to grant Addus' request because the request was not made in a proper motion and was instead included in a response to an entirely separate motion.

### B. The Motion to Exclude

AHP moves to exclude the testimony and report authored by Avery Thompson, a witness retained by VanStory. (Doc. No. 102.) Thompson's original report, dated April 23, 2026, is attached as an exhibit to the memorandum of law accompanying AHP's motion. (Doc. No. 103-1.) After AHP filed its motion, VanStory attempted to "supplement" the original report with an "amended" report. (Doc. No. 117-1.) The court declines to consider the amended report because that report, dated August 7, 2026, was created after (1) AHP filed the Motion to Exclude; (2) both defendants filed their opening summary judgment motions (Doc. Nos. 94, 98); and (3) the court-ordered deadline of May 1, 2026 for VanStory's disclosure of expert reports had passed (which VanStory never sought to extend). (Doc. No. 68.). Therefore, in deciding AHP's motion, the court will only consider the original written report signed by Thompson (Doc. No. 103-1).

Thompson was "retained to conduct a forensic analysis of several Microsoft Excel documents" that were produced by AHP in this litigation. (Doc. No. 103-1 at 1.) He reviewed a total of 19 documents, which consist of various lists of AHP employees who were slated to be transferred to Addus following the acquisition (VanStory refers to these documents as "census files"). (Doc. No. 117 at 7.) Notably, VanStory does not rely on Thompson's report in his Response brief or in his Response to AHP's Statement of Undisputed Material Facts. (Doc. Nos. 115–115-1.) However, VanStory states that he plans to elicit testimony from Thompson at trial about "the date each census file was created, and whether a person or a system created it." (*Id*. at 6.) He asserts that Thompson's testimony is relevant to the issues in this case because the parties "genuinely dispute," among other things, "when [the employee census files] came into existence." (*Id.*)

AHP argues that Thompson's report and testimony should be excluded for multiple, independent reasons. First, AHP asserts that Thompson's written report fails to disclose the

information required by Rule 26(a)(2)(B) and therefore should be excluded under Rule 37(c). (*Id.* at 3–5.) Second, AHP argues that exclusion is appropriate because Thompson's "qualifications are woefully inadequate, his methodology is unreliable and incomplete, his opinions are unsupported by sufficient facts or data, and his report will serve only to mislead the jury and unfairly prejudice Defendants." (Doc. No. 103 at 1.) As explained below, the court will exclude the testimony and written report by Thompson under Rule 37(c)(1) because the written report fails to comply with multiple disclosure requirements set forth in Rule 26(a)(2)(B).[8]

Federal Rule of Civil Procedure 26(a)(2)(A) requires parties to disclose expert witnesses. If a party relies on a retained expert witness (like Thompson), in addition to disclosing the expert, the party must produce an expert report that includes "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B).

A party's failure to comply with the disclosure requirements under Rule 26(a) is enforced by Rule 37(c), which provides in relevant part:

---

[8] VanStory asserts that the deadline to "supplement" the original expert report was the pre-trial disclosure deadline of December 16, 2026, relying on Federal Rule of Civil Procedure 26(e)(2). (Doc. No. 117 at 2.) But the default deadline set in Rule 26(e)(2) does not override the court's power to set a different expert disclosure deadline. Rule 26(a)(2)(D) makes this point clear: "A party must make these disclosures at the times and in the sequence that the court orders." Here, the court ordered that VanStory make his expert witness disclosures by May 1, 2026, which he did not do. (Doc. No. 68.)

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). A cursory review of Thompson's written report reveals that VanStory failed to comply with nearly all of the expert disclosure requirements mandated by Rule 26(a)(2)(B). The written report does not include "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). In fact, Thompson testified during his deposition that the views expressed in the six-page report and the basis for those views were "just kind of [a] summary" instead of a "line-by-line description." (Doc. No. 103-2 at 25:11–20.) Nor does the written report contain a "complete statement" of Thompson's opinions and "the facts or data considered by" Thompson in forming his opinions: Thompson admitted that the list of documents identified in the report as the "Evidence Reviewed" cannot reflect the complete factual bases underpinning his opinions because those listed documents do not accurately reflect all of the documents he reviewed. (*Id*. at 23:16–25–24:1–11.) Instead, the documents listed in the report reflect only those documents that Thompson "was directed to specifically" review by VanStory's counsel. (*Id*. at 23:22–25–24:1.) Other disclosure deficiencies abound, including Thompson's failure to mention his qualifications or the compensation to be paid to him for this engagement. Fed. R. Civ. P. 26(a)(2)(B)(iv), (vi).

VanStory argues that the court should ignore these disclosure deficiencies and simply accept his "amended" report because additional disclosures were subsequently made in the amended report or disclosed during Thompson's deposition. (Doc. No. 117 at 2–3.) First, as noted earlier, the court will not consider the amended report because that report was authored after the deadline for expert discovery, the Motion to Exclude was filed, and after both defendants filed their opening summary judgment motions. Second, independently, VanStory has not adequately

explained to the court why these late disclosures were either “substantially justified” or “harmless.” Fed. R. Civ. P. 37(c)(1). He fails to even address why the disclosures were not initially made in compliance with court-ordered deadlines. Rule 26(a) is clear that the required disclosures listed in subsection (a)(2)(B) must be included in the written expert report. Fed. R. Civ. P. 26(a)(2)(B). The consequences imposed on a party for failing to include the information required by Rule 26(a) in the report are exclusion of the evidence. Fed. R. Civ. P. 37(c)(1). The parties had several months to complete expert discovery, and the court extended the expert discovery period multiple times in this case. (Doc. Nos. 21, 40, 60, 68.) VanStory never sought an extension of the expert discovery deadline but instead created an entirely new expert report after this motion was filed. There is no excuse for the delay and disclosure deficiencies.

Lastly, the dispute over Thompson’s report is much ado about nothing. VanStory does not rely on Thompson’s report (or the amended report) in his Responses to either of the pending summary judgment motions in this case. (Doc. Nos. 115–16.) Nor does he rely on it in either of his Responses to the defendants’ statements of undisputed material facts, filed alongside their summary judgment motions. (Doc. Nos. 115-1, 116-1.) The court is hard-pressed to see how this evidence is important, at least at the summary judgment stage, when the party who claims that it is important has not even relied on it when opposing a dispositive motion.

Under these circumstances, the court will exclude the report and testimony of Thompson under Rule 37(c)(1). This means that the court will not consider the testimony or report for summary judgment purposes or at trial, should one be necessary. The report is deficient in numerous respects, as detailed above. And the overall importance of Thompson’s testimony is questionable, given that VanStory does not even rely on Thompson’s report in his briefs in opposition to the defendants’ summary judgment motions. Finally, the court is mindful that the

trial scheduled in this case is only two months away. AHP has made clear that it believes additional discovery and perhaps even additional motion practice would be needed if the court were to admit the amended report, which would almost certainly disrupt the current trial schedule. The court has already had to reschedule the trial in this case on two separate occasions. (Doc. Nos. 64, 89.) There will be no more delays.

Because the court finds that the report fails to comply with Rule 26(a), the court need not consider the reliability of Thompson's testimony under FRE 702. The court expresses no opinion about whether the "creation dates and authenticity" of the various Excel documents can be authenticated by some fact witness.

**C. The Motion for Leave**

The court will grant AHP's Motion for Leave. (Doc. No. 123.) The motion was unopposed and seeks to file a reply brief in support of AHP's motion for summary judgment in excess of the page limitation for reply briefs. L.R. 7.01(a)(4).

**D. The Motion to Strike**

The court will deny VanStory's Motion to Strike. (Doc. No. 128.) VanStory requests that the court to "strike" three filings submitted to the court by AHP. (*Id.* at 1.) The three filings are amended versions of AHP's Memorandum of Law in support of its Motion for Summary Judgment (Doc. No. 126) and AHP's Statement of Undisputed Material Facts (Doc. No. 127), along with excerpts of various deposition transcripts (Doc. Nos. 125-1 through 125-3). (Doc. No. 129 at 1.)

AHP represents that these filings merely correct "certain page and line references to deposition testimony" that contained errors and were discovered after AHP's counsel reviewed VanStory's Response in Opposition to AHP's Motion for Summary Judgment (Doc. No. 115.) AHP further represents that "[n]o new legal arguments were introduced," "[n]o new factual

assertions were added, and "[n]o evidence was removed from the record." (Doc. No. 129 at 4.) VanStory did not respond to AHP's representations.

The amended filings removed citation errors in earlier filings. Beyond those changes, the new filings are identical to the earlier filings. The court will deny the motion because it prefers to review papers that are error-free. Besides, a motion to "strike" non-pleadings is procedurally improper. *See Am. Cas. Co. of Reading, Pa. v. Cresent Enters., Inc.*, No. 3:13-cv-0098, 2014 WL 4271495, at *5 (M.D. Tenn. Aug. 28, 2014) ("[A] motion to strike is not a proper procedural method by which to defeat supporting documents which one party finds objectionable."); *HCA-Info. Tech. & Servs., Inc. v. Informatica Corp.*, No. 3:10-cv-01155, 2012 WL 13042609, at *3 (M.D. Tenn. Apr. 2, 2012) ("[A] court may only strike material that is contained in pleadings as they are defined in Federal Rule of Civil Procedure 7(a).").

## III. CONCLUSION

For the reasons stated herein, the court will (i) grant in part the Spoliation Motion (Doc. No. 104); (ii) grant the Motion to Exclude (Doc. No. 102); (iii) grant the Motion for Leave (Doc. No. 123); and (iv) deny the Motion to Strike. (Doc. No. 128.) The parties are prohibited from filing any further motions in this case without first requesting a telephonic conference with the court and obtaining the court's permission.

An appropriate order is filed herewith.

ALETA A. TRAUGER
United States District Judge